## HORTON VS. ARNOLD.

The consideration of a note was a wooden building and the lot upon which it was situated; and the maker of the note went into possession of the premises under his purchase from the payee, and continued in possession until the building was destroyed by fire. *Held,* that he could not show as a defense to an action upon the note, that the payee had no title to the house.

Sec. 28, chap. 137, R. S., was not intended to regulate the *manner of taking* depositions without the state, but rather relates to the *nature and competency of the evidence* when taken. Foreign depositions may therefore be taken under the rules of court existing at the time, but will be subject, on the trial, to any objection as to the competency of the evidence, to which they would be subject if taken *within* the state in accordance with the statute.

A commission to take depositions *without* the state was issued under the old circuit court rules, which provided that the commissioner should certify in his return that the witness was duly sworn or affirmed before giving his evidence. The commissioner conformed to this rule in making his certificate, but did not certify that the depositions were reduced to writing by himself, or by the deponents, or by some disinterested person, &c., nor that the deponents were sworn to testify the truth, the whole truth and nothing but the truth, &c. (Sec. 17, chap. 137, R. S.) *Held,* that in the absence of anything to throw suspicion upon the manner of taking the depositions, the court would assume that the commissioner properly performed his duty, and that the depositions were reduced to writing by a disinterested person.

In a cause pending in a *county* court, after the affidavit and rule for a commission to take depositions, and the plaintiff's interrogatories, were duly filed, and copies of them served upon the defendant's counsel, a commission was, by mistake, is-

Horton vs. Arnold.

sued out of the *circuit* court for the same county. This having been returned, a proper commission was issued from the *county* court upon the papers first filed, and without any new service of copies thereof. *Held*, that depositions taken under the latter commission were properly received in evidence.

APPEAL from the County Court for *Winnebago* County.

Action on a note in the following form :   " For value received, I promise to pay Charles Wormley one hundred and fifty dollars, on demand—to be paid in meat, &c., out of my market. FREDERICK ARNOLD." The note was indorsed by the payee to the plaintiff. The answer alleges in substance, 1. A want of consideration for the note. 2. That on and before the day of the date of the note, said Wormley, and others in collusion with him, falsely and fraudulently represented to the defendant that a certain wooden building then standing and being at a certain specified place in the city of Oshkosh in said county, was the property of one La Dow, and that he had a legal right to sell the same, whereas, in fact, as said Wormley and others well knew, said building was the property of another person, whose name was unknown to the defendant; that in consequence of this fraudulent representation, the defendant was induced to purchase the building of La Dow for $300; that defendant paid $150 of that sum in cash, and made the note in suit to Wormley for the balance, and that the defendant never had received from La Dow or any other person any title to or interest in said building. 3. Part payment.

On the trial, the plaintiff offered the note in evidence with the indorsement thereon. The defendant objected to its being read, on the ground that it was payable not in money but in specific articles, and no demand and refusal had been shown. Objection overruled. One Buxton, as a witness for the plaintiff, then testified as follows :   " I first saw the note mentioned in the complaint, on the 1st of May, 1862, in Oshkosh, in possession of *Horton*. Was present when the parties to this action were together on that day. Plaintiff then demanded payment of the note. He demanded meat. *Arnold* first said

he was ready to pay it; afterwards he said he would not pay it. That took place at Oshkosh. Defendant resides here, and did then. I think it was on the east side of Ferry street, near Mr. Ernst's market or Paige's store; am not certain; think *Arnold* did not then keep a market. The conversation was in the day time." On cross-examination he said: "I went with *Horton* to witness the demand; it might have been in the Commercial Bank; think he commenced the talk; told defendant he had come to demand pay on the note. *Arnold* did not say that it was an unjust claim. Defendant had beef, but *Horton* claimed that it was unfit for sale. The demand was not made at his (*Arnold's*) market; he was not at his place of business. The plaintiff claimed that the meat the defendant wanted to pay was unmarketable meat, and refused to take it for that reason. Defendant said he had not any other meat. I do not know anything about the quality of the meat myself; I did not see it. Plaintiff did not demand money; said he was ready to wait a reasonable time. I do not know where *Arnold's* meat was; it was not where we were." The plaintiff's own deposition, and that of Wormley, the payee of the note, were then offered in evidence, they having been taken by Chas, E. Hobby, Esq., of the town of Phelps, Ontario county, N. Y., under a commission issued from the county court of Winnebago county, September 8, 1863. The *certificate* of the commissioner indorsed thereon stated that each of the witnesses therein named "was duly and publicly sworn before giving his evidence." Attached to the commission was a copy of rules 61, 62 and 63 of the circuit court rules in force at that time. After the answers of each witness, subscribed by him, was the following certificate, signed by the commissioner: "Examination taken, reduced to writing and by the witness subscribed and sworn to the 19th day of September, 1863." The defendant objected to the reading of the depositions in evidence on the grounds, 1. That there was no affidavit filed with the clerk of said court, showing the materiality of said witnesses. 2. There was no rule

entered in the common rule book, authorizing commission to issue. 3. No copy of an affidavit of materiality of witnesses, nor of any rule for the commission to issue, has been served on the defendant's attorney. 4. No copy of the interrogatories has been served on the defendant's attorney. 5. It does not appear that the deposition was taken before any notary public, or other person authorized by law to take depositions. 6. The return does not show that either of the witnesses was sworn to testify the truth, the whole truth, and nothing but the truth. 7. The return does not show the *time* when the deposition was taken. 8. The return does not show that the deposition was written by the commissioner, or by the deponent, or by any disinterested person in the presence of the commissioner, or under his direction. 9. The return does not show that the testimony was read to or by deponents, and then subscribed by them.—The plaintiff then produced to the court "certain papers," including an affidavit of the materiality of said witnesses, made by one of plaintiff's attorneys, and a rule that the commission issue, signed by said attorneys, which were filed in the office of the clerk of said court July 10, 1863; a copy of said affidavit and rule, and also a copy of the interrogatories attached to the commission, with acknowledgment of service of each of the same indorsed thereon by the defendant's attorney, July 10, 1863. The defendant admitted that no cross interrogatories were filed by him. It was also shown that a commission had been issued from the *circuit* court of said county, August 3, 1863, addressed to said Chas. E. Hobby, to take the testimony of the plaintiff and said Wormley, which commission was returned and filed in the office of the clerk of said court August 20, 1863. The court thereupon overruled the objection to said depositions, and they were read in evidence. The plaintiff's deposition contained the following statement: "In the latter part of April or 1st of May, 1862, I demanded of the defendant payment of said note in meat, in the city of Osbkosh, * * at a banking office in said city. When I made this demand, *Ar-*

*nold* first said he would let me have the meat; he shortly afterwards said he would not; he offered to turn out to me, in payment of the note, what purported to be a gold watch, which I declined to take. After this conversation, I remained in Oshkosh about two days, and saw *Arnold* a number of times." After the plaintiff rested, the defendant introduced evidence tending to prove that the consideration of the note was a wooden building claimed by said La Dow, and a lease of the lot on which it stood, and that said building was burned up about ten days after he took possession of it, May 10, 1859. He then offered evidence to show that neither La Dow nor Wormley was the owner of said building, nor in possession of it at the time of the execution of the note; that it was owned by parties residing in Chicago, Illinois; and that he (defendant) " never obtained possession from or through the contract of sale, nor from La Dow." Evidence objected to, on the grounds that it was immaterial, and not admissible under the answer; and objection sustained.

The defendant further offered to prove by a witness that at the time of the pretended sale, the title to the building mentioned in the answer was not in La Dow, and he had no interest in it, and no right to sell it, and that he (La Dow) knew that such was the fact, but wilfully and falsely represented to the defendant that he had a title to it, and the right to sell it; that he did sell it as his own property; and that this was the sole consideration for the note in question. The court ruled out the evidence, except that part which related to the representations made by La Dow, and to the consideration of the note: and it does not appear from the case that the defendant introduced any part of the evidence so offered. As to the question of a demand for payment of the note in meat, &c., the defendant testified as follows: "I have paid about $40 on the note, at different times, out of my market. As soon as I found out it was a fraud, which was soon after the fire, I told them I would pay nothing. Wormley got some meat after the fire

but left soon after. I always let him have meat when he called for it, till he went away. Before he left, he asked me what I would give him for the note. I saw *Horton* at my house; he said he had bought the note and wanted to settle. I told him it was a false note, and wanted to see my attorney. I told *Horton* at first I would give him the meat and done with it; he refused to take the meat; he wanted it all at once. Under the agreement he was to have it from time to time; it was good meat I offered to let him have; this conversation was in presence of Mr. Buxton, near the Commercial Bank. I told him I was ready to pay the meat; he refused to take it; *Horton* never demanded the meat at my market; nobody entitled to it demanded meat on the note at my market, without getting it. Afterwards *Horton* demanded money, and I told him the note did not call for money. I always told him I would rather pay the meat than be sued." On cross-examination he said: "Horton first came to my house and said he had the note, and wanted his pay in money. I told him it was not a money due bill; *Horton* said he had no use for meat; he demanded pay on the note at Freeman's office; at first he said he would take the meat, afterwards he refused; this was on the street; at Freeman's office he demanded money; I think it was below that he said he would take meat; this took place in the fall of 1862; it was before he sued. Buxton was present; it was cold weather; cannot recollect whether it was in the spring or fall. I had no meat market on the first day of May, 1862. *Horton* did not demand meat in the presence of Dr. Buxton. I then offered meat to him; there was difficulty about the price; I dont know that he asked for money; I offered him meat; at first he said he would take it; afterwards he refused; he wanted meat lower than we could buy it for; I offered it to him for five or six cents per pound; he did not offer any price; I charged Wormley eight cents per pound. As soon as I found out that it was a false note, I paid no more on it. I paid some after the fire; did not keep paying until Wormley went away;

did not let him have much meat after the fire; Wormley never called for meat after I found out that the note was a fraud, for I told him that I would not pay any more on it."

The court found as facts that the consideration of said note was the wooden building described in the answer, together with a lease of the land on which it stood; that no false or fraudulent representations were made by Wormley or others in collusion with him, or any other person, with regard to the title of said building; that the plaintiff was the owner and holder of said note; that he had demanded payment of the same according to its terms, which was refused, and that there was due thereon $132.35. Judgment accordingly. The plaintiff filed written exceptions to said findings, and appealed from the judgment.

*H. B. Jackson,* for appellant:

1. Depositions of witnesses taken out of the state are "subject to the same conditions and objections as if taken within this state." R. S., ch. 137, sec. 25. One of these is, that the deponent "shall be sworn to testify to the truth, the whole truth and nothing but the truth, relating to the cause for which the deposition is taken." R. S., ch. 137, sec. 14. Another is, that "the deposition shall be written by the deponent, or by some disinterested person," &c., and shall be "carefully read over to or by deponent, and shall then be subscribed by him." Sec. 16. There is nothing in the certificate of the commissioner to show how the witnesses were sworn, and nothing to show that the testimony of Wormley was not written by the plaintiff himself, or some other interested person. 2. The commission under which the depositions were taken was issued without authority. When the first commission had been issued, returned and filed, the affidavits, rules &c., upon which it had issued and been executed, were virtually dead. Before a second commission could be legally issued, a second affidavit must be filed, a second rule entered, and a copy of the second interrogatories served on the attorney of the opposite

party. *McCoy v. Hyde*, 8 Cow., 68 ; *Belden v. Devoe*, 12 Wend., 223. 3. The defenses sought to be established by the proof rejected by the county court are, first, failure of consideration; and second, false and fraudulent representations. A total failure of consideration is a good bar to an action on simple contract. 2 Wend., 431 ; 8 id., 115–117 ; 10 id., 513 ; 11 Johns., 60. The house for which the note was given was a chattel, and the rules which apply to the sale of real estate, with reference to the necessity of an eviction in order to admit the defense of failure of title, do not apply here. In an action for the price of a chattel, the defendant may prove a deceit in the sale, and thus defeat the action. *Beecker v. Vrooman*, 13 Johns., 302. 4. Counsel contended that the plaintiff did not show a demand for payment made in accordance with the terms of the note.

*Whittemore & Weisbrod*, for respondent :

Want of seizin in a vendor who has conveyed real estate with covenant of seizin, is no bar to an action on a note for the purchase money ; but there must have been an eviction, or the defendant must have been legally prevented from taking possession, to render the plea good. *Tallmadge v. Wallis*, 25 Wend., 107 ; *Whitney v. Lewis*, 21 id., 131 ; *Batterman v. Pierce*, 3 Hill, 176 ; *Winslow v. Buel*, 11 How. Pr. R., 373 ; *Lamerson v. Marvin*, 8 Barb., 9. The law implies that La Dow warranted his title to the house ; and the warranty was a sufficient consideration for the note. If there is a breach of the warranty, the parties must resort to their respective actions on the note and on the warranty. *Whitney v. Lewis, supra.* So also in an action for the price of *personal property*, the purchaser cannot set up title in a third person to defeat a recovery. The defendant cannot dispute the title of his vendor unless he has been charged at the suit of another person who has recovered on a paramount title. *Vibbard v. Johnson*, 19 Johns., 77.

*By the Court,* COLE, J. Several of the objections taken to the admission of the depositions of *Horton* and Wormley are not true in point of fact, as an examination of the record will show. It is claimed that the certificate of the commissioner was not sufficient for the reason that it does not state that the witnesses were sworn to testify to the truth, the whole truth and nothing but the truth; nor does it state that the depositions were reduced to writing by the commissioner, or depuonents, or some disinterested party in his presence or under his direction. The commissioner certifies that each of the witnesses was duly and publicly sworn before giving his evidence, and there is nothing whatever to throw any suspicion over the manner of taking the deposition. Under such circumstances we think we are authorized to assume that the commissioner properly performed his duty, and that the depositions were reduced to writing by a disinterested party. The depositions were taken on commission under the old circuit court rules, which, among other matters, say that the commissioner shall certify in the return that the witness was duly sworn or affirmed before giving his evidence. Rule 61. The commissioner conformed to this rule in making out his certificate, and we deem it sufficient in that particular. It is said that the statute provides that when the deposition of any witness without the state is taken under a commission, the same is to be used in the same manner, and will be subject to the same conditions and objections, as if it had been taken in this state. Sec. 25, chap. 137, R. S. And in case the deposition is taken within the state, the magistrate is required to certify that before the examination the witness was sworn to testify the truth, the whole truth and nothing but the truth relative to the cause. Sec. 17. We think, however, that section 25 was not intended to prescribe or regulate the manner of taking depositions without the state, but rather relates to the nature and competency of the evidence, when taken; in other

words, that foreign depositions may be taken under the existing rules, but will be subject on the trial to any objection which might exist to them if they were taken within the state according to the statute. When for any reason the evidence would be incompetent if taken within the state, the same objection might be made to it when taken without the state on a commission. Inasmuch, therefore, as the certificate conforms to the rules of the circuit court upon the subject, it is sufficient.

A still further objection taken to the deposition is, that it was taken upon a second commission illegally issued. This objection is clearly untenable. The case shows that copies of the affidavit and rule for the commission, and of the interrogatories, were served upon the defendant's counsel. The first commission, however, was by mistake issued out of the circuit court, while the action was pending in the county court. So on the return of this commission, as it was a nullity and could not be used, a proper commission was issued, on the papers already filed, from the county court. We discover no error or irregularity in this which should exclude the depositions. And as these were the material objections to the depositions, they were properly disregarded, and the evidence admitted.

Again, it is insisted that the county court erred in excluding evidence tending to show that the vendor of the appellant had no title to the house for which the note sued on was given, but that it was owned by parties in Chicago. The consideration of the note was a wooden building and the lease of the lot on which it was situated. The appellant purchased the building and lease of one La Dow, and he swears that he went into the possession of the premises under this contract of sale. It appears that he remained in possession until the building was destroyed by fire. He now claims that he can show a want of title in his vendor as a defense to the action. But this is a mistake, as the following authorities conclusively establish: *Case v. Hall et al.*, 24 Wend., 101, and cases there cited; Story on

Sales, § 203. It is obvious that the appellant relies upon a breach of the warranty of title, although he does not offer to show that he was disturbed in his possession by the true own-er, if the property did not belong to his vendor. "Possibly the owner may never claim and enforce his title, or if he does, the seller may settle with him." And therefore he cannot set up the title outstanding in a third party, even if it exists, to de-feat an action brought for the purchase money. The county court ruled that all fraudulent representations made by the vendor in respect to the title might be given in evidence, so that there is no room for complaint upon that ground. If fraud had been practiced in the sale, by which the appellant had been injured, an opportunity was given him to show it.

We think the finding of the court that the plaintiff duly de-manded of the defendant the payment of the chattel note in meat, and that the payment was refused, is amply sustained by the evidence in the cause.

The judgment of the county court is therefore affirmed.