Hoyt, Respondent, vs. Fass and another, imp., Appellants.

*September 26 — October 13, 1885.*

MILWAUKEE CITY CHARTER: EQUITY.  *(1) Certificates of board of public works: Sale of delinquent lot to city.  (2) Remedy of holder of one certificate when other holders refuse to join in enforcing lien.*

1. Where a lot is sold by the city treasurer of Milwaukee for the amount of certificates of the board of public works, and is bid in by the city, the certificate of such sale issued to the city will be held by it in trust for the several owners of the certificates of the board of public works.

2. Two certificates of the board of public works against a lot in Milwaukee were owned by the plaintiff and a third by the defendants, all issued in one year.  The lot had been sold for the amounts due on such certificates and the certificate of the sale was held by the city.  The value of the lot was less than the amount due either on the plaintiff's certificates or on that of the defendants.  The defendants had acquired the legal title to the lot, and declined to make any settlement with the plaintiff or to join with him in surrendering their several certificates to the city treasurer, taking up the sale certificate, and enforcing collection thereof, as provided in the city charter.  *Held,* that the plaintiff, having by himself no remedy under the charter, might maintain an equitable action to have the amounts due on the several certificates of the board of public works determined and to enforce payment thereof by a sale of the lot and a *pro rata* division of the proceeds.

APPEAL from the Circuit Court for *Milwaukee* County. The case is thus stated by Mr. Justice CASSODAY:

" This is an appeal from an order overruling a general

demurrer to the complaint.   The complaint alleges, in effect, the incorporation of the city of Milwaukee; that in the year 1878 the lot in question, situated on the northeast corner of Hubbard and Lloyd streets, in said city, was assessed and taxed for grading, paving, planking, graveling, and gutter-paving said streets, respectively, in front of said lot during said year, and making a sewer during said year in front of said lot in said Lloyd street, and that for such works and improvements the board of public works of the city issued three several certificates at the dates and for the amounts and with the numbers, to wit:   No. 28, for $23.81, issued July 1, 1878; No. 57, for $905.75, issued August 10, 1878; No. 123, for $392.57, issued November 6, 1878; and that said lot was also assessed in said year for a general city tax $1.77,— making in all $1,324.90; that January 27, 1879, the city treasurer offered said lot for sale therefor at the regular annual sale of lands for delinquent taxes in the city, and there being no bid therefor the same was thereupon struck off to the city, and thereupon a certificate of sale in the usual form was issued to the city for said sum of $1,324.90, with costs of sale; that all said taxes remained unpaid, except said general tax, which had been redeemed; that the city treasurer still holds the sale certificate; that certificate No. 123 is the joint property of the defendants *Fass* and *Niemann,* who hold and own it; that certificates Nos. 28 and 57 have become the property of the plaintiff, who holds and owns the same, and that there is due to the plaintiff thereon the sums therein named, respectively, with interest thereon at twenty-five per cent. per annum from January 27, 1879; that at the time the certificates were issued the lot was not worth to exceed $250, and was never worth to exceed $700; that after certificate No. 123 was issued to *Niemann,* he, for the benefit of himself and *Fass,* acquired the title, and became and still is the owner in fee of the lot, and that *Fass* and *Niemann* own the lot; that

by reason of the lot being worth so much less than the cer-
tificate owned by *Fass* and *Niemann*, and also so much less
than the certificates owned by the plaintiff, the latter could
realize nothing, and would lose money by surrendering his
certificates to the city treasurer in the usual way and paying
the amount of certificate No. 123, and taking from the city
a transfer to him of said sale certificate, and then enforcing
the collection thereof in the usual way; that although re-
quested so to do *Fass* and *Niemann* had, before the com-
mencement of this action, declined to make any adjustment,
settlement, or compromise of the matter with the plaintiff,
or join with him and surrender their several certificates to
the city treasurer and take up said sale certificate, and then
enforce the collection thereof in the usual way; that after
the plaintiff had obtained his several certificates he was
compelled, in order to protect the same, to redeem other
subsequent general, city, and county taxes to the amount,
in the agregate, of $18.37; that the city holds no certificate
of sale of the lot, or any part thereof, for taxes or assess-
ments for any year previous to 1878; that the several tax
sales mentioned were protected by the statutory bar given
by sec. 3, ch. 309, Laws of 1880.

"The complaint prays judgment determining the amount
due for principal and interest to the plaintiff on said certifi-
cates numbered 28 and 57, and to *Fass* and *Niemann* on
said certificate No. 123; and that the lot, or so much as
necessary, be sold by the sheriff, as upon foreclosure of a
mortgage, and that the moneys arising from such sale, and
properly applicable thereto, be applied in paying the costs
of the action and sale, the redemption of subsequent taxes
and tax liens by the plaintiff, and so much of the balance as
necessary be applied in payment of the amount due on the
three public works certificates, or in case of an insufficiency,
then that the same be applied ratably thereon; that the sale
be not made until a year after judgment, without consent of

the parties; that the sheriff's deed be given to the purchaser upon the sale; that the parties to the action, and all persons claiming under them, be barred and foreclosed of all right, title, and equity of redemption in the land; that the sale certificate be brought into court and canceled; and for general relief."

For the appellants there was a brief by *Johnson, Rietbrock & Halsey,* and oral argument by *Mr. Johnson.*

*Jenkins, Winkler & Smith,* for the respondent.

CASSODAY, J.    Each of the certificates issued by the board of public works was a lien upon the lot, and drew interest at the rate of twenty-five per cent. per annum from the time when the lot was sold by the city treasurer on account of such certificate liens, and was transferable by indorsement. Sec. 13, subch. 7, and sec. 14, subch. 8, ch. 184, Laws of 1874. The several contractors receiving such certificates could have no claim upon the city in any event for the work by them performed, " except from the collection of the special assessments made for the work contracted for." Sec. 21, subch. 5, ch. 184, Laws of 1874. Had the then lot-owner paid the certificates to the city treasurer he would have received the amounts so paid on such certificates, and held the same for the benefit of the owners of such certificates, and such owners respectively would have been entitled thereto on producing and surrendering such certificates to be canceled. Sec. 13, subch. 7, ch. 184, Laws of 1874. The lot-owner not having paid the certificates, and no bid having been made for the lot when offered for sale by the city, the same was properly struck off to the city, and thereupon a certificate of sale thereof was properly issued to the city in its corporate name, vesting in it the same rights at law as any other purchaser would have had; and thereupon the city treasurer was authorized to sell the certificate issued therefor for the amount of such sale and interest at twenty-

five per cent. per annum, and to indorse and transfer such certificate to the purchaser. Sec. 29, subch. 18, ch. 184, Laws of 1874.

It is apparent from the whole theory of the charter that the certificate of sale for the amount of the board of public works' certificates so taken in the name of the city was held by it in trust for the owners of such certificates. Sec. 30, subch. 18, ch. 184, Laws of 1874. Such has been the construction put upon similar provisions in charters. *Jenks v. Racine*, 50 Wis. 321; *Finney v. Oshkosh*, 18 Wis. 209; *Fletcher v. Oshkosh*, 18 Wis. 233. The small item of $1.77, general city tax, included therein, has been paid, or the certificate redeemed to that extent, and, of course, that has no significance here. It follows from what has been said that the sale certificate of $1,324.90, less the item of general city tax mentioned, was held by the city in trust for the benefit of the several owners of the three certificates issued by the board of public works, and such owners were, of course, the *cestuis que trust*. Those certificates being transferable, as we have seen, the plaintiff properly became the owner of Nos. 28 and 57, and the defendants *Fass* and *Niemann* properly became the owners of No. 123. No other person or party, as it appears from the record, has any *equitable* interest in, or right to, the sale certificate so held in trust by the city. This is in effect confessed by the city and its treasurer by allowing the case to go by default. The substance of it all is that the plaintiff and *Fass* and *Niemann*, as the legal owners in severalty of the three certificates so issued by the board of public works, thereby became in equity co-owners in common of the sale certificate so held in trust by the city, together with the lien on the lot, and a right to a deed of the same thereby secured. The outstanding legal title to the fee of the lot was necessarily subordinate and subject to the lien of the sale certificate and the right to a deed thereon, and consequently

subordinate and subject to the equitable rights of the plaintiff and *Fass* and *Niemann* as co-owners in common in equity of such lien and right to a deed. Were it otherwise, and the legal title had been superior to such equitable rights, then it may be that such legal title, on being acquired by *Fass* and *Niemann*, or one of them, might at once have inured to the benefit of all such co-owners in common in equity, including the plaintiff, in pursuance of well-established rules of law. *Phelan v. Boylan*, 25 Wis. 679; *Frentz v. Klotsch*, 28 Wis. 312; *Weaver v. Wible*, 64 Am. Dec. 696; Freem. Co-tenancy, § 154. Here *Fass* and *Niemann* are in effect seeking to permanently enjoy the subordinate legal title, freed and discharged from the superior equitable lien which the law has fastened upon it, and at the same time wholly escape any liability by reason of that burden. The mere fact that *Fass* and *Niemann*, or one of them, subsequently acquired the legal title to the fee of the lot did not give to them, or either of them, any higher or better equity in such lien and right to a deed than was possessed by them prior to such acquisition. The only possible effect the acquisition of such legal title to the lot could have had upon the prior equitable rights and interests therein of *Fass* and *Niemann* would be to merge such equitable rights and interests into such legal title; but that could in no way cripple or reduce the plaintiff's prior equitable rights and interests.

· Assuming that the prior equitable rights and interests of *Fass* and *Niemann* were not, in equity, merged into their legal title of the lot, but kept alive, and the case stands precisely the same as it did prior to their acquisition of such legal title. The theory of the defense that because the value of the lot is less than the nominal amount of certificate No. 123 owned by *Fass* and *Niemann*, they may therefore abandon their equitable claim, and retain the legal title to the lot in defiance of the plaintiff's equitable rights,

unless he shall first pay the nominal amount of their certificate as the price of being allowed to resort to the lot, which is of much less value, is, to say the least, very inequitable, as it would in effect wholly destroy or render valueless the plaintiff's equitable rights and interests, by compelling him in advance to pay out more than he could possibly get back in attempting to save such rights.

It is said, however, in effect, that the plaintiff must lose his equitable rights and interests, or else do so, because the city charter furnishes no other remedy. The remedies furnished by the charter are of course statutory, and hence legal remedies. As shown, the plaintiff has no adequate or beneficial remedy by himself alone under the charter. By the refusal of *Fass* and *Niemann* to co-operate with him in pursuing the remedy given by the charter the plaintiff is left without any beneficial remedy at law. This suit is in equity. It may be difficult, if not impossible, to find any reported case just like it. In equity it would seem to be very much the same as though the original lot-owner had given to the city in trust a mortgage on the lot to secure the payment of the three certificates issued by the board of public works, and then *Fass* and *Niemann*, having procured one of them and thereafter the legal title to the lot, had then refused to join with the plaintiff in enforcing the lien of such mortgage, or to allow the plaintiff to enforce the same without first paying to them the full amount of their certificate, notwithstanding such amount was considerably more than the value of the lot. Such an instrument would be quite similar to the trust deed involved in *Marvin v. Titsworth*, 10 Wis. 320. Such trust deeds are, in legal effect, mortgages, and, as such, should be enforced by a bill in equity, under which the necessary parties can be convened and their rights ascertained and adjusted. Jones, Mortg. §§ 62, 1448, 1769, and authorities there cited. The same learned author states, what every lawyer will concede, that

"a mortgage to two or more persons to secure debts due to them severally, creates a tenancy in common and not a joint tenancy. The interest of each is not necessarily a moiety, but is in proportion to his respective claim. Each may enforce his claim under the mortgage in a form adapted to the case." Jones, Mortg. § 704, and cases there cited. Numerous cases might be cited in this court where equitable mortgages have been enforced by suit in equity. True, the sale certificate is not strictly a mortgage, but it is a lien upon the lot to secure the claims due the plaintiff and *Fass* and *Niemann* in severalty. There can be no question but that one having a lien upon property, real or personal, may maintain an action in equity to have the amount of such lien determined, and to enforce payment thereof by sale of the property or otherwise. *Boorman v. Wis. R. E. Co.* 36 Wis. 207. The case is new, but equity is flexible, adapting its salutary principles to cases as they arise, and is never wanting in the dispensation of justice. Where equitable rights and interests are jeopardized, and the letter of the law furnishes no adequate remedy, it is the business of equity to discover one. This is in harmony with the established maxims of the law: "Where there is a right there is a remedy;" "The law will always give a remedy;" "Where the law gives a right it gives a remedy to recover;" "Where a common remedy ceases the recourse must be had to an extraordinary one." Whart. Leg. Max. Nos. 383, 402, 764, 766. Here the plaintiff has a right, and is the co-owner of a superior equity. The remedy given by the charter has, by force of circumstances, ceased to be available. He has no adequate remedy, except by bill in equity like the one before us.

We think the complaint states a good cause of action, and hence that the demurrer thereto was properly overruled.

*By the Court.*—The order of the county court is affirmed.