Argued April 4, affirmed July 11, 1928.

# V. R. DENNIS *v.* THE CITY OF McMINNVILLE.

(269 Pac. 221.)

For appellant there was a brief and oral arguments by *Mr. R. L. Conner,* City Attorney, and *Mr. Richard W. Montague.*

For respondent there was a brief and oral argument by *Mr. Oscar Hayter.*

BEAN, J.—No question is raised as to the power of the city to make the improvements, nor as to the validity of the assessments imposed against the property within the districts for the cost of the improvements. The case was brought upon the theory that

under the contract between the plaintiff and the city the plaintiff has no recourse to any fund, except the special fund to be assessed, collected and paid into the city treasury for the purpose of paying the cost of the improvements; that the city proceeded regularly to levy upon and sell the property against which the special assessments were delinquent and unpaid and the city became the purchaser at such sale for the full amount due on each piece of property, with interest and costs; that the city failed and neglected to pay into its treasury the amounts bid for the property purchased by it, or otherwise to create a sufficient fund to pay the warrants held by the plaintiff, although a reasonable time has elapsed, namely, more than five years, since the issuance of the warrants, and that the city has wholly exhausted all means provided by its charter, or otherwise, for the collection of assessments for the creation of the special fund mentioned.

That the city by purchasing the lots against which the special assessments were made has precluded itself from selling the lots and providing a special fund for the payment of the improvements made by plaintiff.

The contract for the construction of the improvement contains the following provisions:

"The party of the second part shall look for payment except as above provided for street intersections, only to the fund to be assessed, collected, and paid into the city treasurer for the purpose of paying the cost of construction of the work embraced in this contract, all of which shall be done in accordance with the provisions of the charter of the city of McMinnville. That the city of McMinnville, upon the completion and acceptance of the said work will proceed to assess and collect said money and pay

such portion of the same as may be due to the party of the second part; that the party of the second part will not require the party of the first part to pay said cost, or any part thereof other than street intersection as herein provided, out of any other fund except as provided by the charter of the said city, unless said city shall fail or neglect to provide such funds by a valid assessment of the cost of such work upon the property directly or indirectly benefited by such improvement.''

The city in its answer sets out an alleged agreement between the plaintiff and the defendant city, to the effect, that plaintiff authorized the mayor of the city to bid in the property, excepting a sufficient amount to pay the city for the expense of engineering and superintending the work, which was included in the special assessment and which the city had paid; that he promised to take over the property sold for delinquent assessments for which no other bid was made, except a sufficient amount to reimburse the city for said engineering.

The testimony which was offered in support of the alleged agreement upon the trial of the equitable defense rested wholly in parol. At the time of the sale of the lots, November 27, 1922, the mayor of the city bid in the lots in the name of the city. The city marshal, on November 28, 1922, issued the certificates of sale of the lots, showing the same were sold to the City of McMinnville, and thereafter filed his report. On February 1, 1926, the City of McMinnville, by its mayor and recorder, executed and acknowledged assignments of the several certificates of sale to the plaintiff with the exception of one. The plaintiff refused to accept the certificates of sale or the assignments and testified that he never

saw them. The city caused to be executed by the
marshal deeds of conveyance of the lots direct to
plaintiff V. R. Dennis and tendered the same to him
which he refused to accept. The plaintiff testified
that he never authorized the mayor to bid the lots
in for him and never authorized the assignments of
the certificates of sale and refused to recognize the
assignments.

It is claimed on behalf of the city that an under-
standing was had between the plaintiff and the city
attorney that the mayor should bid in the lots at
the sale. The city attorney testified that he ex-
plained to plaintiff that the Montague O'Reilly Com-
pany had a contract in a similar condition as plain-
tiff's contract and that "the mayor was going to
bid on the property and would have an adjustment
later on"; and the city attorney thought the same
arrangement would be made with him (Dennis), and
plaintiff "said to have the mayor bid in the property
and that we would subsequently make an adjust-
ment." This was before the sale. There were other
improvement contracts made by the city at a later
date which provided that in the absence of any
other bid at such sale, the city should bid in the
property for the contractor. This may have been a
partial cause of the misunderstanding between the
city attorney and the contractor. No such stipula-
tion is contained in the contract involved herein.

The subsequent adjustment was never made; that
is, it was never agreed what part of the real property
the city would have, and what part Dennis should
take; according to the claim of the city the agreement
was never completed: See *Knight* v. *Alexander*, 42
Or. 521, 524 (71 Pac. 657), and cases there cited.

1, 2. The learned trial judge found that the defendant had failed to prove its equitable defense. In that finding we concur.

It is alleged in defendant's answer as follows:

Bids were made "in reliance upon the agreement of plaintiff to accept the property in satisfaction of his claim in lieu of the creation of any fund in money." Under these conditions the plaintiff contends that the asserted agreement was within the statute of frauds and should have been in writing under Sections 804 and 808, Or. L. We think the point is well taken. By the great weight of authority, an agreement on the part of one purchasing land with his own money, and taking the title in his own name, to hold it in trust for another person or to reconvey it to the grantor is within the statute of frauds: 26 R. C. L. 1197, § 32; *Kaufer* v. *Stumpf,* 129 Wis. 476 (109 N. W. 561); *Largey* v. *Leggat,* 30 Mont. 148 (75 Pac. 950); *Bauman* v. *Holzhausen,* 33 N. Y. (26 Hun) 505; *Levy* v. *Brush,* 45 N. Y. 589; note, 115 Am. St. Rep. 788.

The case in hand illustrated the wisdom of the statute. Let us suppose that during the time that elapsed after the sale to the city and before this suit, about four years, on account of the construction of a large manufacturing establishment in the immediate vicinity, the value of the lots had trebled and plaintiff had desired a conveyance of the lots, he could not have enforced such a contract as claimed by defendant.

Under the provisions of Section 112 of the charter of McMinnville, the council of the city has authority to purchase, take and hold real property, when sold for delinquent taxes or assessments levied or imposed

under the authority of the charter of McMinnville, and to sell and dispose of the same.

The city bid $834.23 in excess of the amount claimed by plaintiff. It would therefore appear that the city bid in the property to protect its own interest and not for Dennis. To require the plaintiff to take all or a portion of the lots a few years later in satisfaction of his assessment certificates after they may have decreased in value, or under any condition, would be for the court to make a contract for the parties.

3. The certificates of sale of the real estate mentioned show that the property was purchased by the city. The city held the certificates for about four years, and it is not agreeable to equity for the city to maintain that the mayor was not authorized to bid in the property: 3 McQuillin, Munic. Corps., p. 2737, § 1256; *Beers* v. *Dalles City*, 16 Or. 334 (18 Pac. 835); *Steiner* v. *Polk County*, 40 Or. 124 (66 Pac. 707).

These certificates were tendered to plaintiff by the city and there was an attempted assignment to plaintiff made by the mayor and recorder. The city therefore represented the certificates of sale and the deeds tendered to plaintiff to be valid. It is therefore inconsistent for the city to urge that there was a want of authority of the mayor to make the bid. The pleading of the defendant does not suggest lack of authority of the mayor to purchase the property in behalf of the city at the assessment sale.

4, 5. This appeal was taken as an appeal in an equity suit. There was no bill of exceptions taken in the trial of the action at law; therefore, the only question upon this appeal as to the law side is whether or not the pleadings and the findings support the judgment. The testimony in the law action not being

properly before this court, it must be presumed that the same supports the findings of fact made by the trial court, which have the same force and effect as the verdict of a jury.

6. The city, by purchasing the lots against which the special assessments were levied, precluded itself from selling them in the regular way and thereby providing a fund from the proceeds of the property in accordance with its contract with plaintiff, and as required by law, which has been stated by this court several times, in substance, as found in *O'Neil* v. *Portland,* 59 Or. 84, 87 (113 Pac. 655):

"In this state it is now the settled law that where the expense of improving a city street is to be paid from a special fund, created by assessment on abutting property, a failure of the municipality to comply with any of the requirements of the charter essential to supplying such fund, or an unreasonable delay in enforcing such provision, or collecting and paying over the money, gives the contractor a right of action *ex delicto* against the corporation for damages, in which he is entitled to recover the amount due under the contract with interest, notwithstanding a provision therein that he shall look for payment only to the special fund, and will not require the municipality by any legal process or otherwise, to pay the same out of any other fund"; citing *Northern Pac. Lbr. Co.* v. *East Portland,* 14 Or. 3, 8 (12 Pac. 4); *Portland L. & M. Co.* v. *City of East Portland,* 18 Or. 21 (22 Pac. 536, 6 L. R. A. 290); *Commercial Nat. Bank* v. *Portland,* 24 Or. 188 (33 Pac. 532, 42 Am. St. Rep. 854); *Little* v. *City of Portland,* 26 Or. 235 (37 Pac. 911); *Jones* v. *City of Portland,* 35 Or. 512 (58 Pac. 657).

7. The plaintiff alleged, and the trial court found, that after the city purchased the property it wrongfully failed, neglected and refused to pay into its treasury any part of the amount bid therefor or to create a sufficient fund to pay the warrants issued

to plaintiff, although a reasonable time has elapsed to enable the city so to do, and by reason of its said negligent conduct, defendant has wholly exhausted all means provided by its charter, or otherwise, for the collection of such special assessments for the creation of the special fund provided for in its contract.

Defendant contends that the duty of the city in respect to the payment of a contractor under a contract of this kind is fully performed when it has provided proper proceedings and offered the property for sale. This claim is not in keeping with the plain letter or spirit of its contract. Such contention is not in accord with the opinion in *Commercial National Bank* v. *Portland,* quoting in part from *Reilly* v. *City of Albany,* 112 N. Y. 30, 42 (19 N. E. 508), as follows:

"When the contractor," says RUGER, C. J., "had performed his work according to his contract, he had no duty remaining to discharge and then had a right to rely upon the implied obligation of the city to use with due diligence its own agencies in procuring the means to satisfy his claims. It could not have been supposed that he was not only to earn his compensation, but also to set in motion and keep in operation the several agencies of the city government, over which he had no control, to place in the hands of the city the funds necessary to enable it to pay its obligations. That was a power lodged in the hands of the city, and the clear intent of the contract was that it should exercise it diligently for the purpose of raising the funds necessary to pay for the improvement. For an omission to do so it would become liable to pay such damages as the contractor might suffer by reason of its neglect of duty."

In the O'Neil case this court said, as recorded at page 88 of the Report:

"As applied to the contract between plaintiff and defendant it is within the contemplation of the law that, in procuring the funds with which to meet the obligation incurred, pursuant to the city charter, ordinance, and the agreement set out and referred to in plaintiff's complaint, the city must exercise reasonable diligence in making the assessment and collecting the same, in order to prevent liability attaching for the liquidation of the debt out of other funds. * * Under its charter the city had full control of the proceedings to be taken for securing the fund; not the plaintiff, who when he had finished the labor in accordance with his contract, and the same had been accepted, had done all that was required of him; *Jones* v. *City of Portland,* 35 Or. 512 (58 Pac. 657)."

In *Dennis* v. *Willamina,* 80 Or. 486 (157 Pac. 799), the syllabus reads thus:

"When the expense incurred for the improvement of a city street is to be paid from a special fund to be obtained by an assessment on the property benefited, a neglect of the municipality to comply with any requirements of the charter, essential to secure such fund, or any unreasonable delay in enforcing such provisions of the fundamental law of the city, or a failure to collect or pay over the money within a reasonable time, renders the municipality liable in damages for the cost of the improvement."

Counsel for defendant urges that when the city purchased the property it held it in trust for plaintiff. We find no authority for such procedure in the charter of McMinnville. None is pointed out by counsel.

In cases where the charter requires the city, in the absence of other bids, to bid in the property, the law would become a part of the contract, and there would be no necessity for any assent or agreement on the

part of the contractor. This feature of the case appears to have been realized by the defense when it pleaded in its answer the agreement between plaintiff and the city attorney. The whole defense, as the case was tried in the Circuit Court, depended on such agreement which defendant failed to substantiate by proof.

In the case of *Barber Asphalt P. Co.* v. *City of Chicago,* 139 Ill. App. 121, the plaintiff brought an action on special assessment vouchers. The defendant had bid in some of the lots liable for the assessments, but it was urged that it only acquired them in trust capacity. The court held that the city, under the circumstances, should be treated no differently than any other purchaser and therefore should be required to pay the same amount of its bid into the special fund. The language of the court at pages 132, 133 is as follows:

"We concur, therefore, in the plaintiff's contention that having taken out tax certificates reciting that it has paid the amount of the assessment, interest and costs, the city is estopped from contradicting such recitals, that the judgment confirming the assessment must be deemed satisfied by the sale and purchase and the city thereafter becomes liable to apply the amount of the purchase to the assessment fund and in payment of liabilities against such fund. As we said in *City of Chicago* v. *Union Trust Co.,* 138 Ill. App. 545, 'If such sale is made to a private individual he would be required to pay the amount bid at the sale upon receiving his certificate of purchase or tax deed. No reason is apparent why there should be any distinction between a municipality and an individual in this respect.' "

*Finney* v. *Oshkosh,* 18 Wis. 220, a case cited by defendant, was governed by different charter provisions than the case at hand. In *State ex rel.* v.

*Hobe,* 106 Wis. 411 (82 N. W. 336), cited by defendant, the proceeds of property sold to satisfy a special assessment were claimed by the public, where certificates representing such assessments were outstanding: *Conway* v. *Chicago,* 237 Ill. 128 (86 N. E. 619), also cited by defendant. The syllabus shows the purport of the case. It reads thus:

"A city is liable in an action of *assumpsit* by a contractor for a local improvement constructed by special assessment if there is a balance due the contractor and the city has collected the special assessment but has not paid it over; but if the city has neglected or refused to collect the assessment the contractor's remedy is *mandamus* and not *assumpsit.* * *

"A city is not liable to the contractor for the amount of delinquent special assessments where it has performed its full duty under the law and the contract by perfecting the tax titles as to the delinquent property and tendering the deeds to the contractor."

This ruling was under contractual provision as shown at page 134 of the Report as follows:

"In case the city of Chicago should become the purchaser of any special assessment certificate at any sale for the delinquent special assessments, in default of other bidders, such purchase shall not be deemed a collection of such special assessment, and no act of the city done or suffered shall be construed as a collection of any special assessment, or part thereof, until the money due thereon shall be actually paid into the city treasury. * * The said party of the first part agreeing hereby to make no claim against said city, in any event except from the collections of the special assessment made or to be made for said improvement, and to take all risks of the invalidity of special assessments, or any of them, or of the proceedings therein, or for failure to collect the same."

The case of *Lovell* v. *St. Paul,* 10 Minn. (Gil. 229) 290, referred to in 2 Page & Jones on Special Assessments, Section 1512, was controlled by a section of the charter as shown at page 293 of the Report ending as follows:

"provided, that in no event when such work is ordered at the expense of any lots or parcels of lands, shall either the city or ward be responsible for the payment thereof."

These cases may illustrate that different rules prevail in other states, but they do not control the case at bar. The question of negligence on the part of the municipality does not seem to have been involved in these cases cited by defendant. In the present case the record does not disclose that there was no other bidder than the city at the marshal's sale of the assessed property. There is no reason disclosed by the record why the city could not have sold the property at the marshal's sale to parties other than itself, even if it had been necessary for a continuance of the sale.

8. The ex-marshal amended his return so as to make it appear that the city purchased as "trustee" for plaintiff. This was done April 6, 1926, almost five years after the original return was made. It is contended on behalf of plaintiff that the amended return is a nullity for the reason that it was made after the three-year period for redemption had elapsed and the officer who made it had gone out of office. We think the point is well taken. In any event the testimony does not show that the city was authorized to purchase the property for the plaintiff. In *Hall* v. *O'Connell,* 51 Or. 225, 230 (94 Pac. 564), we find the following:

"An officer cannot, after the expiration of the time prescribed for redeeming property sold for delinquent taxes, amend a record so as to make it correspond with the acts performed by him." Citing *Judevine* v. *Jackson,* 18 Vt. 470; *Langdon* v. *Poor,* 20 Vt. 13.

We can only review the testimony as it affects the equitable defense. The facts as found by the trial court upon the hearing of the action at law, in the absence of a bill of exceptions, will be presumed to be in accordance with the evidence. Error is not presumed but must be shown. So here the negligence of the city alleged in the complaint and found by the trial court, must be taken as established. The findings support the judgment.

The city under the contract and the law was in duty bound to exercise due diligence and take the detailed proceedings to create the special fund. This includes the collection of the money, if it can be done with reasonable effort, and the deposit thereof in its treasury for the benefit of the contractor whose duty ends when he performs the work in accordance with the contract. The duty of the city does not end when "the delinquent property is put up for sale under regular proceedings." If the property is sold to an individual it is the bounden duty of the municipality to collect the amount and place it in the special fund. When the property is bid in by the city it is no less the duty of city officials to cause the proceeds to become a part of the special fund.

Finding no error in the decree in the equity matter, nor in the record of the law action, the decree and judgment are affirmed. AFFIRMED.

RAND, C. J., and BROWN and BELT, JJ., concur.