Argued March 27, reversed and remanded June 11, rehearing denied July 30, 1929.

## CITY OF NEWBERG *v.* WARREN CONSTRUCTION CO. ET AL.

(278 Pac. 96; 279 Pac. 644.)

For appellant there was a brief and oral argument by *Mr. Frank B. Layman.*

For respondent Warren Construction Co. there was a brief over the names of *Messrs. Teal, Winfree, McCulloch & Shuler, Messrs. Wood, Montague &*

*Matthiessen* and *Mr. Clarence Butt,* with an oral argument by *Mr. John A. Shuler.*

For respondent C. L. Philliber there was a brief over the name of *Mr. Leo J. Hanley.*

BELT, J.—In 1921 the City of Newberg entered into contracts with J. D. Gordon and the defendant Warren Construction Company to build cement sidewalks and to pave certain streets, in accordance with plans and specifications submitted. The cost of these improvements was, under the charter of the city, to be assessed to abutting property owners specially benefited. The work was performed by the contractors and warrants were drawn on the special funds in payment thereof. Some of the owners failed and refused to pay the assessments levied on their property and it was duly advertised for sale. No bidders appeared who were willing to pay for the various pieces of property an amount equal to the assessments levied against them. The property was thereupon "struck off" to the City of Newberg. The city marshal, on November 14, 1922, executed a deed to the city for the respective properties upon which there were delinquent assessments and for which there were no bidders. Before expiration of the three-year period for redemption some of the owners redeemed their property. The money thus received was applied in payment of the warrants drawn on these special assessment funds. The city

made an effort to sell the remaining lots for such price as would equal the amount of the assessments and accrued interest but was unable to do so. Defendants refused the city permission to sell the property at a less price. Defendants also refused to accept tender of deeds by the city.

No question is raised concerning the regularity of the special assessment proceedings. The city asserts that when the property was struck off by the marshal to it, pursuant to the charter, it was acting as a compulsory trustee for the benefit of those who held warrants drawn on the special sidewalk and pavement funds. Defendants contend that the city was an actual purchaser of the property and that it should pay into the special funds for their benefit an amount equal to the assessments levied against the property.

Plaintiff alleges in its complaint that defendants threaten to bring an action to recover amount due on the warrants and pray for a decree declaring that it holds the property in trust for defendants and directing conveyance to be made to them according to their respective interests, and if such direction be refused that the court direct the administration of the trust. A general demurrer to the complaint was sustained and, upon refusal of the plaintiff to plead further, the suit was dismissed. Hence this appeal.

■ ■ Was a general liability incurred by the city merely because the property in question was struck off to it in the absence of bidders who were willing to pay the amount of the assessments levied against it? This question is answered in the negative. There was no dereliction of duty on the part of the city. It did everything within its charter powers to create, by special assessment proceedings, sufficient funds to pay the warrants issued. The contractors were

bound to take cognizance of the powers vested in the city by its charter. They knew that the cost of these improvements was to be paid by levying a special assessment against abutting property owners who were specially benefited, and that it could not be paid by a general tax. Indeed, the charter provisions, by implication, became a part of the contracts entered into between the city and the contractors. Gordon and the defendant Warren Construction Company had as good an opportunity to know as did the city whether the property levied against would bring at public sale an amount equal to the assessments. If the liens upon the property were not sufficient security for payment of warrants, the holders thereof would have no recourse against the city unless the deficiency in the special assessment funds was due to some negligent act of omission or commission on the part of the city.

The charter of the City of Newberg (Section 74) provides:

" * * If there should be no bidder for any tract described in said warrant at a sum sufficient to pay the said assessments thereon, with interest and costs, the marshal shall strike the same off to the city of Newberg for the whole amount of said assessment, with interest and costs to date of sale."

Section 75:

"The marshal executing such warrant shall immediately make a deed for the property sold thereon to the purchaser, stating therein that the same is made subject to redemption, as provided in this chapter. Within three years from the date of such sale, the owner or his successor in interest, or any person having a lien by judgment, decree, or mortgage on the property or any part thereof sold, may redeem the

same upon the terms and conditions provided in section ——.''

Section 76:

''The city treasurer shall be custodian of all deeds to the city of all lands purchased at marshal's sale, and shall, at any time within three years from the date of such deed, sell and transfer all right, title and interest of the city of Newberg, acquired by such deed, upon receiving from any duly qualified redemptioner the amount of purchase money and twenty-five per cent additional thereto, with interest upon the purchase money from the date of sale to the time of payment at the rate of ten per cent per annum, and the amount of any tax which the purchaser may have paid upon the property and such deed shall have the effect of divesting the city of Newberg of all right, title and interest in said land.''

■ Under the above charter provisions the city was obliged to accept a deed when the property was struck off to it by the marshal. If it had refused to accept the trust imposed upon it by the charter, the contractor would, indeed, have cause to complain. The object of taking title in the name of the city was to enable it to collect delinquent assessments for and on behalf of warrant holders. If it be said that the city was a purchaser within the ordinary acceptation of the term, then we inquire: From what source would the municipality obtain funds with which to make payment? It was not within the contemplation of the charter that a general tax be levied against the property owners to pay for an improvement which was of special benefit to owners of abutting property only. The conduct of the city is consistent only with the conclusion that, in accepting the deeds in question, it was acting for the benefit of the defendants. Counsel for respondents have not pointed out

wherein there has been a dereliction of duty by the city in obtaining funds through special assessment proceedings. The case of defendants rests solely upon the proposition that the city made an actual purchase and, like any other·purchaser, it should pay the amount of the bid. We cannot concur in this theory. The city did not guarantee that the property levied against would, at public sale, bring the full amount of the assessments. It only contracted to ''set the legal machinery in motion'' and to exercise reasonable diligence to obtain funds with which to pay the warrants issued.

In *Donahue* v. *Village of LaGrange,* 263 Ill. 607 (105 N. E. 762), the court in a kindred case said:

''It is conceded that the village has in good faith endeavored to collect each of the respective installments as they became due and payable but has been unable to do so because of the default of the property owners in paying their assessment, and that the property was returned delinquent and stricken off to the village at tax sales, and tax titles were perfected, in so far as could be, to the property sold at these sales and the same tendered to plaintiff in error, which he refused to accept. Under the law the village had done its full duty when it perfected its tax titles to the property that was delinquent and tendered the deeds obtained on the tax sales to plaintiff in error. After it had done this it was not liable to plaintiff in error for any of these delinquent installments. *Conway* v. *City of Chicago,* 237 Ill. 128 (86 N. E. 619).''

In *State ex rel. Donnelly* v. *Hobe,* 106 Wis. 411 (82 N. W. 336), it was held:

''In case lands, sold for the purpose of enforcing special assessment liens, are bid in by the county, the certificates of sale, when issued, are not the property of the county, but of the holders of the special assess-

ment certificates. The county, in such circumstances, becomes a trustee of the tax-sale certificates for the actual owners thereof, and the treasurer should turn the same over to them—the holders of the special assessment certificates—on demand therefor and surrender of such certificates."

Justice BREWER, in *Peake* v. *City of New Orleans*, 139 U. S. 342 (35 L. Ed. 131, 11 Sup. Ct. Rep. 541), said:

" * * when a contract for local improvements is entered into the contractor must look to the special assessments, and to them alone, for his compensation, and if they fail without dereliction or wrong on the part of the city, neither justice nor equity will tolerate that it be charged as debtor therefor."

In support of the conclusion reached in above cases, also, see *Hoyt* v. *Fass*, 64 Wis. 273 (25 N. W. 45), *Finney et al.* v. *City of Oshkosh*, 18 Wis. 209, and *Lovell* v. *City of St. Paul*, 10 Minn. 290.

We are not concerned with cases such as *Commercial National Bank* v. *Portland*, 24 Or. 188 (33 Pac. 532, 41 Am. St. Rep. 854), *Jones* v. *City of Portland*, 35 Or. 512 (58 Pac. 657), *O'Neil* v. *City of Portland*, 59 Or. 84 (113 Pac. 655), and *Dennis* v. *Willamina*, 80 Or. 486 (157 Pac. 799), wherein the negligence of the municipality relative to creation of the special fund gave rise to an action *ex delicto*. Much reliance is had by respondent upon the recent case of *Dennis* v. *City of McMinnville* (Or.), 269 Pac. 221, but we think a careful consideration of the facts therein clearly shows that it is not controlling here. The charter of the City of McMinnville materially differs from that of plaintiff municipality, as witness Section 112 thereof:

"*Purchase Real Property Sold for Delinquent Tax or Assessments.* To purchase, take and hold real

property, when sold for delinquent tax or assessment levied or imposed under the authority of the City of McMinnville, and to sell and dispose of the same."

In the Dennis case the city paid $834.23 in excess of the amount claimed by the contractor. The court observed: "It would, therefore, appear that the city bid in the property to protect its own interests and not for Dennis." We might also infer from this bid that there were other bidders and that these were prevented from purchasing the property for the amount of the assessments. Under such circumstances it would be only just and equitable that the City of McMinnville should be obliged to pay into the special fund the amount of the bid which its mayor made. In the instant case there were no bidders. In the Dennis case there was evidence upon which to base the reasonable inference that the city actually purchased the property. Here the conduct of the City of Newberg clearly indicates that it was acting in the capacity of a trustee. In the McMinnville case there was evidence of negligence. Here there is none.

The decree of the Circuit Court in sustaining a demurrer to the complaint and in dismissing the suit for failure of the plaintiff further to plead is reversed and the cause is remanded with permission to the defendants to file an answer, if they see fit to do so, within ten days from date of mandate of this court. Upon failure so to do, the lower court is to enter a decree directing the City of Newberg to sell the property in question in the manner provided by its charter at the highest and best price obtainable: *Morris* v. *City of Sheridan*, 86 Or. 224 (167 Pac. 593). The proceeds from such sale, less expenses thereof, shall be prorated to the defendants as their interests

may appear, and in accordance with the priority of their liens. After such application of the proceeds there shall be no liability against the city as a debtor.

Plaintiff is entitled to its costs and disbursements in this and in the lower court.

REVERSED AND REMANDED.

COSHOW, C. J., and BEAN, J., concur.

BROWN, J., absent.

---

Rehearing denied July 30, 1929.

ON PETITION FOR REHEARING.

(279 Pac. 644.)

For the petition, *Messrs. Teal, Winfree, McCulloch & Shuler, Messrs. Wood, Montague & Matthiessen, Mr. Clarence Butt* and *Mr. Leo J. Hanley.*

*Contra, Mr. F. B. Layman,* City Attorney.

BELT, J.—Counsel for defendants say the most "colossal blunder" made in our original opinion was in directing' that the expenses of the sale should be deducted before prorating proceeds of the sale to the contractors. We are more charitable. It is mildly suggested that if any mistake was committed it occurred when the contractors refused to accept the deeds tendered by the city. The city had one sale under the provisions of its charter. It is now compelled by reason of the defendants to have another. Common sense, as well as equity, dictates who should bear the expense.

■ It is asked: "Upon what authority can the city act as ·trustee?" Certainly a municipal corporation has implied power to do that which is reasonably necessary to accomplish those things expressly authorized by charter. We are not dealing with a case wherein a city has undertaken to administer a private trust: McQuillin on Municipal Corporations (2 ed.), § 1230. If the city could act as trustee of the funds, we see no reason why it could not so hold the real property.

We see no need to reiterate the distinction between this case and *Dennis* v. *City of McMinnville,* 128 Or. 101 (269 Pac. 221).

Petition for rehearing is denied.

REHEARING DENIED.

COSHOW, C. J., and BEAN, J., concur.

BROWN, J., absent.