J. M. Crawford Jr., Devisee of J. M. Crawford, Appellant, *v.* The Bellevue and Glenfield Natural Gas Company.

*Oil and gas lease—Statute of frauds—Parol evidence—Modification of contract.*

In an action brought to recover royalties under a written oil and gas lease for the term of one year, with the right of renewal from year to year on an uncertain condition, parol evidence is admissible to show that, upon the lessee expressing an intention to abandon a well, the lessor agreed to waive the rental provided by the lease, in consideration of his receiving gas from the well for domestic purposes; the lessee to have the balance.

Argued Oct. 27, 1897.  Appeal, No. 79, Oct. T., 1897, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., March Term, 1896, No. 24, on verdict for defendant.  Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Affirmed.

Assumpsit to recover royalties alleged to be due under an oil and gas lease.  Before STOWE, P. J.

The facts appear by the charge of the court, which was as follows:

The first matter that calls for your consideration is what is the real meaning of this lease, and in what relation do the parties stand to each other as to their rights under it in reference to this well?  As you already well understand, this is a lease of property by Mr. Crawford to Mr. Dimmick—and I may say, in a general way, the defendants stand in Dimmick's shoes—by which the defendants or Dimmick had a right to bore certain gas or oil wells on the property belonging to Mr. Crawford; all wells to be located by the consent of both parties : " to have and to hold the said premises until the said party of the second part for and during the term of one year from this date," and then giving the said party the exclusive right to drill.  Dimmick had the absolute right to hold possession of that property, and to explore it according to the terms of the lease for a year.  That was fixed; it did not make any difference, so far as I can

discover from the lease, whether he discovered any oil or not, he had a year under the terms and provisions of the lease with reference to the location of the well to explore it, and see what he could do, by investigating it by any means he saw fit, by putting down wells. That right was to be exclusive; nobody else was to have the right during that year. Up to this point it was simply tentative, Dimmick was to have this right to go on for a year and investigate and see what he could make out of it, and the practical way of doing that, I presume, was to put wells down. But the wells were expected to produce either oil or gas, and of course while Mr. Dimmick had the right to investigate, it is not to be supposed that he was to have the product of these wells, gas or oil, for nothing. So they go further and say: "It is further agreed that should a paying production of oil or gas be found on said land by second party within the term of one year, then the first party agrees to extend this lease from year to year so long as said production continues." So far Dimmick had the right to investigate, and to do that he had to put money into the ground by boring wells. If there was a paying production, all Mr. Crawford would have had to do when the year was up would be to say: "Get out of this," and the wells would be his. Of course, no reasonable man would make an arrangement of that kind, and so the next provision is that if oil is found in paying quantities Dimmick was to have the right to extend the lease from time to time as long as the said production continues. Otherwise he would have been perfectly at the mercy of Crawford; as soon as the year was up Crawford could have said: "You have no further right here," and he could take the land just as it was, with the wells upon it producing gas or oil, and to meet that emergency this provision was put in. Then there is a provision that operations shall be commenced within ten days, which is immaterial. "The second party hereby agrees, in further consideration for this lease, to deliver unto the said party of the first part the full one eighth of all oil he may produce and save from said land, to be delivered in pipe line free of charge to first party." That is, in case there was a production of oil, Crawford was to have that as his rent; he was to have one eighth of the product of the well or wells that might be located upon the ground. "It is further agreed that if gas is obtained in paying quantities and mar-

keted the consideration in full to the first party shall be $250, every six months," etc., to be paid to Mellon's bank in thirty days while the sale of the gas continues. Those are the terms of this lease. Gas was to be obtained in paying quantities, and Dimmick or his lessees were to be the judges of that, of course. It was to be marketed; they were the parties that were to do the marketing, it was for them to say when it was marketed; and then so long as they chose to continue to sell gas from that well they would have to pay rent, and no longer. The second party also agrees that the first party may use gas delivered free of charge for domestic purposes, at the farm house of himself and his son. "In case gas is found sufficient for domestic purposes of the first party and not sufficient for marketable purposes the second party agrees to leave said well for the use of the said party so that a small pipe may be put in." If any gas was found such as would suit the purpose of Crawford under that provision Dimmick or his lessees or agents were to leave it; they were not to destroy the well; they were not to block it up; they were not to do anything that would interfere with the production of gas that might come from that well, but they were to allow it to be there so that it might be used by Crawford for domestic purposes. That seems to bring us to this conclusion: The agreement was that Mr. Dimmick was to have the right for one year to make explorations, put down wells; if gas were found (I need not refer to the oil, there was no oil), in paying quantities and Dimmick or his assignee saw fit to use it for marketable purposes then they were to pay $500 a year, and if there was not enough such as that the party saw fit to dispose of or to make use of for marketable purposes, then they were to leave the well so that Mr. Crawford could have the use of it for his domestic purposes.

It is admitted in this case that the defendant was the assignee of Dimmick; it stood in his shoes with reference to this contract; it owed the same duties to Mr. Crawford and had the same right, so far as Crawford was concerned, under this lease that Mr. Dimmick had. It was bound to know what was in this lease, and it took it subject to all the terms. It used the gas; it turned it into its lines; it marketed it more or less, whatever the quantity was. It did not say, as it would have a right to say, this thing won't pay, and then

cut off the connections. I apprehend under this lease it could have done that whenever it saw fit, whenever it chose not to market the gas, be it much or little, that went to the lines, it could have done so; but it continued here until this suit was brought, and even later, to take whatever gas was there and use it for marketable purposes; it sold it in connection with gas coming from other wells. That does not necessarily make it liable. Prima facie it does. Without anything else in the case it would be bound to pay this rent under the contract, because it has chosen to use this gas. The presumption is (which we would take as conclusive in a case like this) that it considered it in paying quantities under the circumstances, and sent it to market and sold it for whatever it could get for it. But while that is prima facie the case, it does not necessarily follow that in this case there ought to be a verdict for the plaintiff for the amount claimed, or for any amount; because the defendant alleges that subsequent to this arrangement, when it turned out that this well, as it says, was not a paying well; when Mr. Dimmick was about to exercise the right he had to abandon the well and leave it just as it was, he made a new arrangement with Crawford by which it was understood that Crawford was to have the use of this well for his domestic purposes substantially as stated in the lease, or with some matters a little different, and that in consideration of the well not being abandoned (because that was what it amounted to), Dimmick was to have the surplus after whatever Crawford needed for his use for any purpose he (Dimmick) might need it; in other words, turn it into this pipe line and make what he could out of it. If you believe that statement of the case, then the defendant has shown a good defense, because the payment of $500 a year royalty or rent has been superseded by the subsequent agreement under which, as claimed by defendant, it was understood there was to be no rent paid, and that, instead of abandoning the well, which Mr. Dimmick had a right to do, this new agreement should be made by which certain things were to be done for the benefit of Crawford, taking the gas to his house and putting in fixtures, or whatever the arrangement may be found to be, and the surplus was to be used by Dimmick (which, of course, would give a right of the present defendants to use it) without any compen-

sation other than to leave the well there and put in a pipe, as the contract may have required him to do. Upon that phase of the case the burden of proof is upon the defendant. [This original agreement is in writing; upon its face it shows specifically the terms agreed upon between the parties, and while a subsequent contract that would supersede the effect of a written or printed and signed contract, such as this is, may be shown by sufficient evidence, the jury should always be satisfied fairly and fully by the testimony that the evidence would sufficiently and fairly sustain the allegations that a new contract was made so as to supersede the written contract and take its place. Of course you are all aware that verbal agreements are not so distinct or satisfactory as written instruments, and while, as I said, a written instrument may be superseded, or modified, or qualified, or set aside by a subsequent verbal arrangement with reference to the same transaction, yet the evidence should be such as would fairly justify the jury in coming to the conclusion without very serious hesitation to put it in no stronger terms that the contract by which it is sought to set aside a written instrument is sufficiently established by the evidence before them.] [4]

Now that is a matter entirely for the jury. We have in this case the parties on one side testifying to a contract that is entirely sufficient to justify a verdict, if the jury believe it, in favor of the defendant. We have the witnesses on the other side who specifically deny that the contracts claimed and alleged by the defendant to be made by Mr. Dimmick, or through him, were such as he claims them to be. That is a question simply of fact for the jury. We have no right—if we did we would have no disposition—to say further than that the evidence to set aside a written instrument should be sufficiently distinct and clear to justify the jury in fairly coming to the conclusion that such an arrangement was made. It is not to be established, as we say in a criminal case, beyond a reasonable doubt, but it should be clear, distinct and sufficiently proved to satisfy the judgment of the jury that such an arrangement was actually made. If it amounts to that, then the verbal arrangement should be carried into effect. But if it is not sufficient to justify the jury in fairly coming to that conclusion, then the written instrument should be their guide, and they should give a verdict based upon its contents.

Plaintiff's points and answers thereto were as follows:

1. It being admitted that the defendant entered into possession under an agreement dated November 28, 1887, between J. M. Crawford, Sr., and G. H. Dimmick, and the defense being a subsequent modification of such agreement whereby defendant was relieved from the payment of royalty, such subsequent agreement is required by the statute of frauds to be in writing, and the defendant, not having shown any such writing, the plaintiff is entitled to a verdict. *Answer:* Refused. [1]

2. A parol modification of a contract in writing must be clearly and distinctly proved, and the evidence in this case is not sufficient to show such clear and distinct agreement, and the verdict should therefore be for plaintiff. *Answer:* Refused. [2]

3. That under all the evidence in this case the verdict should be for plaintiff. *Answer:* Refused. [3]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

*R. B. Petty,* for appellant.—The contract in this case was for a sale of the oil and gas, and is such a contract as is required by the statute of frauds to be in writing; any modification of a contract of this character must also be in writing; a party cannot assert title by virtue of a writing such as is required by the statute of frauds and at the same time repudiate the consideration provided for in the writing. If he may, then the purpose of the statute is defeated: Stoughton's App., 88 Pa. 198; McCafferty v. Griswold, 99 Pa. 270; West Nat. Gas Co. v. DeWitt, 130 Pa. 235; Huff v. McCauley, 53 Pa. 206; Emerson v. Slater, 63 U. S. 28; Swain v. Seamens, 76 U. S. 254; Wilgus v. Whitehead, 89 Pa. 133; Clark v. Russel, 3 Dallas, 415.

Our second argument is that if it be conceded that parol evidence is admissible to vary the contract, such evidence must be clear and distinct, and the evidence in this case is not sufficient to justify its submission to the jury: McGrann v. R. R., 29 Pa. 82; Boyertown Bank v. Hartman, 147 Pa. 558.

*M. A. Woodward,* with him *J. S.* and *E. G. Ferguson* and *E. G. Hartje,* for appellee.—An oral agreement of lease which

may or may not be performed within three years is not within the statute of frauds; it must appear from the agreement itself that it is not to be performed within three years : Russell v. Slade, 12 Conn. 455; Peters v. Westborough, 19 Pick. 364; Blanding v. Sargent, 33 N. H. 239; Esty v. Aldrich, 46 N. H. 147; Moore v. Fox, 10 Johns. 244; Rogers v. Brightman, 10 Wis. 55; Foster v. McO'Blenis, 18 Mo. 88; Reed on the Statute of Frauds, secs. 463 and 464; Jackson v. Litch, 62 Pa. 451.

An oral contract to sell land would be enforced where so far executed that it would be inequitable to rescind it: Schuey v. Schaeffer, 130 Pa. 16; Daisz's App., 128 Pa. 572; Bean v. Valle, 2 Mo. 126; Steadman v. Guthrie, 4 Metcalfe (Ky.), 147; Shively v. Black, 45 Pa. 345.

PER CURIAM, November 8, 1897:

This case appears to have been carefully and correctly tried. We find nothing in either of the specifications of error that is sufficient to justify a reversal of the judgment. Nor is there anything in the questions involved that requires discussion.

Judgment affirmed.

