# Hunter *v.* Apollo Oil & Gas Company, Limited, Appellant.

*Oil and gas lease—Rental—Contract—Mutual mistake—Evidence.*

An oil and gas lease provided for the payment of $500 per annum, "for each and every well from which gas is transported or used off the premises." One well was drilled, and produced gas, but not in large quantities. Subsequently the lessor signed the following writing: "The well rental on my farm shall be reduced from $500 to $100, and a new well to be commenced within three months from this date." Afterwards the lessor signed the following, indorsed on the original agreement: "In consideration of commencing another well within three months, I hereby reduce the well rental on this lease from $500 to $100 per year." The lessor, and the two other persons who were present at the signing of these papers, one of whom was the lessee's agent, all testified that the understanding of the parties at the time the paper was signed was that the reduction applied only to the first well. *Held* that the evidence was ample to warrant the jury in finding that the understanding and agreement prior to and at the time of the indorsement on the original agreement was that the reduction of the rental applied only to the first well, and did not include other wells that might be drilled under the lease.

Argued Oct. 27, 1902.    Appeal, No. 4, Oct. T., 1902, by de-

fendant, from judgment of C. P. No. 1, Allegheny Co., March Term, 1901, No. 130, on verdict for plaintiff in case of R. O. Hunter v. Apollo Oil & Gas Company, Limited. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Assumpsit to recover rental under a gas lease. Before STOWE, P. J.

The opinion of the Supreme Court states the case.

At the trial Henry A. Bowers testified as to tenders made to the lessor on a basis of $100 rental for a second well.

The court ordered this testimony to be stricken out. [2]

Defendant presented this point:

The court is requested to charge that the oral testimony on behalf of the plaintiff is not sufficient to overcome the terms of the written agreement sued upon in this case, and the plaintiff is only entitled to recover upon the two wells drilled and operated by the defendant company, at the rate of $100 per annum per well, or at the rate of $200 per annum for both wells. *Answer*: Refused. [1]

The court charged in part as follows :

[There is the evidence on the part of the plaintiff that what was said was the definite understanding at the time this paper was signed and previous to its signing. Another witness corroborates that statement of his. Those two witnesses are sufficient then, to carry the case to the jury.] [3]

*Errors assigned* were (1, 3) above instructions, quoting them; (2) ruling on evidence, quoting the bill of exception.

*W. M. Lindsay*, with him *A. M. Neeper*, for appellant.

*J. M. Hunter*, with him *J. A. Beatty*, and *J. Q. Cochran* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, January 5, 1903:

R. O. Hunter, the appellee in this case, by an agreement in writing dated December 9, 1895, granted to the Apollo Oil & Gas Company, Limited, the appellant, all the oil and gas in and

under twenty-two acres of land in Armstrong county " for the term of five years, or as much longer as oil and gas is found in paying quantities." The agreement contained, inter alia, the following provision : " 3. If gas is found upon said premises the second party agrees to pay to the first party five hundred ($500) dollars per annum, payable quarterly on demand, for each and every well from which gas is transported or used off the premises, for whatever time the same is so transported or used." The appellant company began to drill a well on the premises shortly after the execution of the agreement and completed it about the first of March, 1896. It produced gas but not in large quantities.

Sometime after the appellant had completed the first well, known as well No. 1, on the appellee's premises and prior to March 20, 1896, at the request of Henry A. Bowers, the appellant's agent, Mr. Hunter signed the following memorandum of agreement :

" The well rental on my farm shall be reduced from five hundred ($500) dollars to one hundred ($100) dollars, and a new well to be commenced within three months from this date, March 20, 1896.

   " Witness :                    R. O. HUNTER.    [Seal]
     " H. VANDERSAAL."

Subsequently Mr. Hunter signed the following writing, indorsed on the original agreement :

" In consideration of commencing another well within three months, I hereby reduce the well rental on this lease from five hundred ($500) dollars to one hundred ($100) dollars per year.

   " Witness my hand and seal this 20th day of March, A. D 1896.
   " Witness :                    R. O. HUNTER.    [Seal]
     " R. D. WILSON."

When the first quarterly rental became due after the second well, or well No. 2, had been completed, it was tendered to the appellee on the basis of $100 per year for each well, as provided in the modified agreement. Mr. Hunter refused the tender, alleging that the reduction of the rental applied only to the first well and did not reduce the rental of the second or any subsequent well for which, as he claimed, a rental of $500 per year

was to be paid as provided in the original agreement. The appellant refusing to pay the rental of the two wells in accordance with the claim of the appellee, the latter brought this suit to recover the rental of $100 per year for the first well, and $500 per per year for the second well, which was completed on or about June 9, 1896.

The appellant company claims that the writing indorsed on the written agreement correctly evidences the contract of the parties as to the reduction of the rentals and that it applies to all gas wells that might be drilled on the premises. On the other hand, the appellee contends that the agreement between the parties prior to and about the time he signed the writing of March 20, 1896, reducing the rentals, was that the reduction applied only to the first well, or well No. 1, and not to any other or subsequent wells that might be drilled on his land; that the writing as signed by him does not contain the contract of the parties as agreed to, and understood by them, and that it was executed under a mutual mistake of both parties. The learned trial judge submitted the case to the jury, holding that there was sufficient evidence to warrant its submission on the question whether the writing embodied the contract of the parties as to the reduction of the rentals or whether the agreement to reduce the rentals applied only to the first well drilled on the appellee's premises. The judge instructed the jury as to their duty in passing on the question for their consideration, as follows: "When you get to that question you are not to decide it merely upon the weight of the evidence, but you have got to consider that the evidence must be clear, precise and specific; it must be sufficient to enable any reasonable and unprejudiced man to come to the conclusion, beyond a reasonable doubt, that the position taken by the plaintiff in this case is sustained by the testimony in order to set aside the written contract." The jury found in favor of the plaintiff, the appellee here, and the defendant company has appealed.

The controlling question in the case is whether there was sufficient evidence of the alleged mistake to submit to the jury to reform the written contract. The trial judge held that the testimony of the plaintiff as to the agreement of the parties concerning the reduction of the rentals was corroborated by another

witness and that the testimony of the two witnesses was sufficient to send the case to the jury. The appellant's counsel alleges that the appellee himself was the only witness who testified that the reduction of the rentals was confined to the first well and therefore the case should have been withdrawn from the jury.

There were but three witnesses in the case and they were all called by the plaintiff. The plaintiff testified in his own behalf that Mr. Bowers, the appellant's agent who procured from the appellee the lease and subsequent papers, approached him in reference to the reduction of the rental on the first well and that he consented to it; that he and Bowers went to the appellant's office in Apollo and he there instructed Mr. Wilson, an employee of the West Penn Gas Company, how to write the paper for the reduction of the rental in the presence of Bowers, who assented to its terms and said, "that it was only the one well that he asked me to reduce and that was all that alluded to;" that Bowers never asked the witness to reduce the rental on but one well and that it was in reference to that well the parties were dealing when the writing was signed by the appellee; that Bowers never asked him to reduce the rental on the farm or lease; that after the indorsement was written on the lease, Bowers read it to the witness and explained to him, "that it was the reduction of the one well, all that he asked me to reduce, that was all, just the one well," and that he then signed it; that for ten or twelve years his eyes have been very bad and hearing defective.

R. D. Wilson, who wrote both papers at the office of the West Penn Gas Company, testified that Hunter and Bowers came to the office and he wrote the indorsement on the agreement as dictated by Bowers; that while he was writing, Hunter and Bowers said they were reducing the rental of No. 1 well, and Hunter said in the presence of Bowers that the reduction applied only to one well and not to the lease and did not affect the lease; that immediately before the signing of the agreement Hunter said, "Mind, that only applies to that one well," to which Bowers replied, "That is all right."

Mr. Bowers testified, inter alia, as follows: "I went to Mr. Hunter; I was told by the company to see Mr. Hunter and have it reduced, this well. I went to Mr. Hunter and told him that

if he would reduce the price of the well that they would drill two or three more wells on his farm, and he talked about it several times before he reduced it.   Q.   Your negotiations, then, were with reference to well No. 1 ?   A.   That was the only well that was on the place at the time."

The testimony was ample, not only to justify its submission to the jury, but to warrant the jury in finding, as they did, that the understanding and agreement prior to and at the time of the indorsement on the original agreement was that the reduction of the rental applied only to well No. 1, and did not include other wells that might be drilled under the lease. That such was the agreement of the parties is established by testimony that is clear, precise and indubitable and fully up to the standard required in such cases.   No other construction can be placed on the language used by the contracting parties prior to and at the time the paper was signed by Hunter.   Presumably the rental of $500 per year provided in the agreement of December 9, 1896, was a fair compensation for the gas privileges on the lessor's land, and it is not apparent, nor has any sufficient reason been suggested why Hunter, without consideration, should reduce the rental of the premises to one fifth the original sum agreed to be paid.   The first well was producing gas in small quantities at the time the reduction in the rental was made and Hunter may have considered it judicious to make a reduction on it as an inducement to appellant to operate the well and drill other wells on the premises.   But it is unreasonable to suppose that on subsequent wells, producing gas in paying quantities, he intended to remit four fifths of the rentals which both parties had agreed was a proper consideration for the lease.   The position of the appellant as to the agreement for the reduction is not supported by reason nor the facts disclosed in the testimony.

We think it equally clear from all the testimony in the case that it was the intention of the parties that the reduction of the rental made by the memorandum first signed by Hunter should be limited to well No. 1.   There is nothing in the evidence that would lead to a different conclusion.

Having properly submitted the case, and the jury having found that the agreement reducing the rental was limited to well No. 1, the court committed no error in striking out the

testimony offered by the appellant to show the tender of the rentals as they became due. As they were made on the basis of $100 per year for each of the two wells as provided in the written contract of March 20, 1896, they were insufficient as a tender and hence, striking out the testimony relating thereto, did the appellant no harm.

The assignments of error are overruled and the judgment is affirmed.