### ANDRE v. GRAEBNER.

LANDLORD AND TENANT — CONTRACT — CHANGE OF TERMS — VALIDITY.

> After defendant had leased a store of plaintiff under a contract for one year, the rent to be paid monthly in advance, defendant became insolvent, and, a difference arising because of the discovery by defendant that he was being charged, contrary to plaintiff's representations, a larger rent than the adjoining tenant, the parties agreed that defendant should thereafter have the premises so long as he continued to occupy them at the same rent as the other tenant, and that the rent in arrears under the original lease should be considered settled. *Held*, that the new agreement superseded the lease, was binding on the parties, and changed the tenancy to one from month to month.

Error to Saginaw; Snow, J. Submitted October 3, 1900. Decided March 26, 1901.

*Assumpsit* by Peter C. Andre against Christopher Graebner for rent. From a judgment for defendant, plaintiff brings error. Affirmed.

*Trask & Smith*, for appellant.

*Crane & Crane*, for appellee.

MONTGOMERY, C. J. February 19, 1895, plaintiff rented

to defendant and his then partner the store in controversy for three years from April 1, 1895. The defendant and his partner went into possession, paying rent at the agreed price of $60 per month in advance until some time in the summer of 1896, when the partner sold out, and defendant continued to occupy the store. February 15, 1898, the defendant being desirous of occupying the store another year, the following indorsement was made on the old lease:

"$700.00.  The within lease is hereby extended for one year longer, viz., from April 1, 1898, to April 1, 1899, at a rent of seven hundred dollars for said one year, and to be occupied for a first-class boot and shoe store by Christopher Graebner; rent monthly and in advance.
  "Saginaw, Feb. 15, 1898.

                              "P. C. ANDRE.
                              "CHRIS. GRAEBNER."

On the 1st day of May, 1898, the defendant was behind in his rent on the old lease and the renewal $180.02. Defendant paid, during the time he was in the store under the new extension, $311.25. On the night of November 30, 1898, defendant moved out without any notice whatever to plaintiff. Plaintiff wrote defendant December 7th that he should look to him for the rent of the store until April 1st. The plaintiff succeeded in renting the store March 1st, so no claim is made for that month. According to plaintiff's claim, defendant owes him $451.07, and the interest since March 1, 1899.

Plaintiff was then renting the store next door to one Altman for $600 per year. The size and location of the stores were the same. Mr. Andre repeatedly told defendant he was treating his tenants alike. Defendant believed he was paying no more than Altman. There is no reason explaining why defendant paid more rent than his next-door neighbor, except the statements made to him by Mr. Andre. About August 24, 1898, Mr. Graebner learned the situation. He went to the office of Mr. Andre, and they talked about the matter. Defendant said to plain-

tiff: "You are not treating me right. I have actually paid you $83.31 more rent than Mr. Altman has paid you for the same time." Defendant says that the only sum talked over on August 24th was the $83.31 that he had paid him more than Altman paid for the same time. That was the first time he knew that Mr. Andre was not giving him the store for the same price Altman was paying. Defendant testified that Mr. Andre agreed to rent him the store from August 20th at $50 per month so long as he occupied it, and call the past settled. The parties made the new bargain to take the place of the old one. Defendant was then financially embarrassed, and plaintiff knew it. Defendant gave a check showing on its face that it was in payment for rent up to September 1st, and later gave similar checks for September, October, and November.

The defendant's version of the facts was accepted by the jury, and defendant had judgment. The plaintiff brings error, and contends that there was no consideration for the discharge of defendant from the payment of the larger rate agreed upon.

The general rule that the payment of a less sum than the amount due from a debtor will not discharge the debt is well settled. *Leeson* v. *Anderson*, 99 Mich. 247 (58 N. W. 72, 41 Am. St. Rep. 597). But, when the payment is made in settlement of a disputed claim not liquidated, the settlement is binding. *Tanner* v. *Merrill*, 108 Mich. 58 (65 N. W. 664, 31 L. R. A. 171, 62 Am. St. Rep. 687). So, when the contract is executory, the parties may agree to substitute a new agreement in place of the old, and in such case neither party is at liberty to repudiate the later agreement on the ground that the consideration for waiving rights under the original executory agreement has failed. *Moore* v. *Locomotive Works*, 14 Mich. 266; *Goebel* v. *Linn*, 47 Mich. 489 (11 N. W. 284, 41 Am. Rep. 723).

It is contended that under either rule this new contract is binding on the plaintiff. We prefer to rest our conclu-

sion on the ground that the original contract was, at the time of entering into the new one, executory in large part. In this case, as in *Moore* v. *Locomotive Works,* defendant, at the time the new agreement was made, might have refused further performance, and have submitted to pay the resulting damages. Instead of insisting upon his rights, the plaintiff elected to waive them, and enter into a new agreement for the future as well as for the past, and the new agreement modified the terms of the former holding in important particulars. Among other modifications was the substitution of a lease from month to month for a letting for a definite period. We think there was no error in the instructions, which were to the effect that, if a new contract was made, as claimed by defendant, and performed by him, there could be no recovery.

The judgment is affirmed.

The other Justices concurred.