RICHARD L. WILSON *et ux.* v. THE PEOPLE'S GAS COMPANY *et al.*

No. 14,953    (89 Pac. 897.)

SYLLABUS BY THE COURT.

1. HOMESTEAD—*Lease—Change in Manner of Paying Rentals—Oral Agreement—Consent of Wife.* An agreement changing the terms and manner of paying rentals of a gas-and-oil lease on a homestead from cash to a royalty of one-tenth of the product does not enlarge or diminish the leasehold estate and need not be in writing or consented to by the wife of the lessor.

2. LANDLORD AND TENANT—*Modification of Lease—Parol Evidence.* A written lease may be subsequently modified or changed with respect to the manner and terms of paying rent by an oral agreement, and such agreement may be admitted in evidence.

Error from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed April 6, 1907. Affirmed.

*Joseph P. Rossiter,* and *T. J. Hanlon,* for plaintiffs in error.

*Eugene Mackey, John J. Jones,* and *Zeigler & Dana,* for defendants in error.

The opinion of the court was delivered by

GREENE, J.: Richard L. Wilson and his wife, Laura M. Wilson, brought this action to recover the sum of $630, alleged to be due them from the defendants, the People's Gas Company, a corporation, and the Atlas Crude Oil Company, a corporation. The plaintiffs signed an oil-and-gas lease in favor of the Citizens Natural Gas and Mining Company upon certain land which was then and since has been their homestead. Several assignments were made of this lease. When this action was commenced and for some time prior thereto the ownership of the gas rights and a small interest in the oil rights was in the Atlas Crude Oil Company. The conditions of the lease which are material in this controversy are:

"In consideration of the premises, the party of the second part agrees to pay as royalty to the party of the first part upon each well of gas or oil from which product is taken having any commercial value the sum of five dollars per month for each month while so taken; royalties to be paid in cash on the first day of each month for the preceding month, payable at the gas company office. In case of the utilization of other products than gas or oil the royalty shall be one-tenth of such products delivered at the surface near mouth of well or shaft."

It was charged in the petition that the defendants drilled twelve producing oil-wells and two producing gas-wells, and that defendants complied with the terms of the lease by paying to plaintiffs five dollars per month for each well, including May, 1904; that since that time they had refused to pay for the wells for any month; and that there was a balance due plaintiffs when the action was commenced of $630.

The defendants denied liability, and answered that Richard L. Wilson became dissatisfied with the conditions in his lease which bound him to accept five dollars per month for each well and sought the defendants and requested that in lieu of five dollars per month for each oil-well he be allowed a one-tenth royalty. This resulted in a verbal agreement, between the parties to change that condition of the lease which required Wilson to accept the cash payment and in lieu thereof allow him a royalty of one-tenth of the oil. In pursuance of this agreement, and in February, 1904, Richard L. Wilson, the Atlas Crude Oil Company and the People's Gas Company executed a "division order," according to which Wilson was to receive one-tenth of the oil, the People's Gas Company one-fortieth, and the Atlas Crude Oil Company the remainder. This division order was sent to the Prairie Oil & Gas Company, which was purchasing all of the output of these wells.

It appears that one of. the .methods of transacting business by that company when . it buys oil in bulk from several different owners is to require them to execute a division order, and at the end of each month it sends to each party from whom oil has been received what is called an "election price-list," stating the quantity of oil received on his account and the price it is willing to pay. If the owner elects to accept the price he signs the election price-list and returns it to the company and the company forwards its check for the amount. This procedure was adopted in this case. Each month after the division order was re-

ceived by the company, until July, 1904, Wilson signed the election price-list slips and returned them to the company, upon receipt of which it forwarded its check for the amount due him. Thereafter he neglected to sign and return these slips.

The cause was tried by the court without a jury and judgment was rendered against the People's Gas Company for forty-five dollars, nine months' rent for one gas-well, and in favor of the Atlas Crude Oil Company for costs. The plaintiffs bring this proceeding in error.

The first contention is that the court erred in admitting the division order in evidence, because it was not a contract between the plaintiffs and the defendants but a temporary arrangement between one of the plaintiffs and the defendants on one side and the Prairie Oil & Gas Company on the other, terminable at the option of Wilson, and because Mrs. Wilson was not a party to it and had not assented to such a change in the original lease.

Whether or not the division order is a contract between plaintiff Richard L. Wilson and the defendants, or between Wilson and the defendants on one side and the Prairie Oil & Gas Company on the other, it was not error for the court to admit it in evidence. The contention of the defendants was that they were not liable to plaintiffs under the clause in the lease relied on by the plaintiffs, because that provision had been changed by the mutual consent of the Wilsons and the defendants, and in lieu of the five dollars per month for each well the Wilsons had agreed to accept a royalty of one-tenth of the oil. The division order was a very material circumstance tending to sustain the contention of the defendants upon that proposition, and the acceptance by Wilson from the Prairie Oil & Gas Company of his monthly receipts under this division order, together with the oral evidence, placed the question of whether such verbal change had been made in the lease beyond a doubt.

The objection that because the land was the homestead of the plaintiffs the change if made was void, because not assented to by the wife, is not maintainable. The lease was regularly executed by the wife. This modification or change in payment of the rentals from cash to a royalty did not interfere with the wife's occupancy and enjoyment of the land as a homestead. It was neither a sale nor a conveyance of the homestead or of any interest therein.

It is also contended that the alleged change in the manner of paying the rentals, if made at all, was a verbal agreement between Richard L. Wilson and the defendants; that the land described in the lease was the homestead of Wilson and his wife; that the wife did not give her consent to such change; and that the agreement was therefore void. Changes may be made in the terms and conditions of such a lease which do not either create a new estate or extend or limit an existing interest in the estate created by the lease. As an example, the lease in question provides that the grantee shall begin operations within one month from the delivery of the lease. This time might be extended by an oral agreement of the parties without extending or limiting the leasehold estate. So with the condition that the lessors should have free gas for their own use. The same is true of the condition that the lessors should have a rental of five dollars per month for each oil- or gas-well from which products were taken of a commercial value. Neither the verbal agreements changing the manner of paying the rental for the oil-and-gas wells nor the division order created any interest or estate in the land.

The last contention is that a subsequent parol agreement by which the obligations of the lessee were changed cannot be proved. The authorities are otherwise. (*Crawford v. Bellevue, etc., Gas Co.,* 183 Pa. St. 227, 38 Atl. 595; *Hunter v. Oil & Gas Co., Ltd., Appellant,* 204 Pa. St. 385, 54 Atl. 274; *Sargent et al.*

*v. Robertson,* 17 Ind. App. 411, 46 N. E. 925; *Munroe v. Perkins,* 26 Mass. 298, 20 Am. Dec. 475; Thornton, The Law Relating to Oil & Gas, § 247.)

The judgment is affirmed.