Argued February 11, reversed and remanded March 4, 1919.

# SHERMAN, CLAY & CO. *v.* BUFFUM & PENDLETON.

### (179 Pac. 241.)

**Frauds, Statute of—Written Lease—Oral Modification as to Rental.**

1. Despite Section 808, subdivision 6, L. O. L., a lease in writing for not more than one year may be modified by oral agreement as to the rental rate for the remainder of the term.

**Landlord and Tenant—Reduction of Rent—Consideration.**

2. Lessor and tenant threatened with bankruptcy and unable to pay stipulated rent could make enforceable oral agreement reducing rental, under written lease with not more than year to run, for the remainder of term, tenant's agreement to continue occupancy and to pay reduced rent and to continue in business furnishing consideration for modification.

**Evidence—Oral Modification of Lease.**

3. In action for balance of rental due under sublease, it was competent for lessee to show that lessor, for sufficient consideration, by oral agreement, reduced rental for remainder of term, not exceeding one year.

**Corporations—Action Through Agent—Authority.**

4. Corporations have power to appoint agents with full authority to act, and, as a general rule, all acts within power of corporation may be performed by agents of its own selection; express authority by resolution directing officers and agents to represent company in execution of contracts not being indispensable.

**Corporations—Ostensible Authority—Agent for Corporation.**

5. Person who knows that agent of corporation habitually transacts certain kinds of business for corporation under circumstances necessarily showing knowledge on part of those charged with conduct of corporate business has right to assume that agent is acting with authority.

**Corporations—Ostensible Authority of Agent.**

6. When in usual course of business of corporation an officer has been allowed to manage its affairs, his authority may be implied from manner in which he has been permitted by directors to transact business of company.

> [As to general rules respecting the authority of agents, see note in 16 Am. St. Rep. 473.]

**Corporations—Agent for Corporation—Ostensible Authority.**

7. General principle that persons dealing with corporate officers and agents are bound to take notice of extent of their authority must be considered in connection with rule that company is bound by acts of its officers and agents within apparent scope of their authority.

Corporations—Authority of General Manager.

8. Corporation is bound by acts of its general manager within apparent scope of his authority.

Trial—Motion for Directed Verdict—Demurrer to Evidence—Admission.

9. Motion for directed verdict is equivalent to demurrer to evidence, admitting truth of evidence given by party against whom verdict is asked, also inferences and conclusions reasonably deducible from it.

Corporations—Authority of General Manager—Presumption.

10. There is presumption that general manager of plaintiff corporation suing for balance of rent had authority to make contract reducing rent, which testimony tended to show he did make.

Landlord and Tenant—Agreement to Reduce Rent—Question for Jury.

11. In company's action for balance of rent due under sublease, subtenant defending on ground plaintiff's general manager had agreed to reduce rent, whether such agreement was made *held* for jury on conflicting evidence.

From Multnomah: GEORGE N. DAVIS, Judge.

Department 2.

This is an action to recover $700, balance of rent for a certain building. The cause was tried before the court and a jury. At the close of all the testimony on motion of counsel for plaintiff the court directed the jury to find a verdict for plaintiff. From a resulting judgment, defendant appeals.

The action involves the following transactions: About January 10, 1910, Sherman, Clay & Co., a California corporation, duly licensed to do business in the State of Oregon, leased from L. B. Stearns and Mary F. Stearns a certain 4-story brick building at Sixth and Morrison Streets, City of Portland, Oregon, and on that date by an indenture subleased to Buffum & Pendleton, a corporation, a portion of the Stearns' building, consisting of a 40-foot store, Number 311 Morrison Street, for a period of five years, to wit: From September 1, 1911, to September 1, 1916. Buffum & Pendleton agreed to pay a monthly rental of $800 a

month for the entire term of the lease, and entered into possession of the premises, paying the rent up to September 1, 1915. At that time and prior thereto, defendant was owing to the general business depression financially embarrassed and on the verge of bankruptcy, and on account thereof, applied to the general manager of the plaintiff John H. Dundore for a reduction in the amount of the rental and alleges that in consideration of defendant's not going into bankruptcy or forfeiting the lease or vacating the premises and in consideration of defendant's undertaking to continue in business and occupy the premises for the balance of the unexpired term of the lease, plaintiff by its general manager agreed to and did reduce the amount of the rental for the unexpired term in the sum of $100 per month, or to $700 per month. The agreement was claimed to have been made about the 7th of October, 1915, at which time the rent for September was due and unpaid. It appears from the evidence that after the alleged reduction agreement some arrangement was made between plaintiff and L. B. Stearns as a result of which from September, 1915, to February 1, 1916, plaintiff's general manager, Mr. Dundore, procured and gave to defendant each month a check for $100, which was signed by Stearns payable to defendant. Defendant immediately indorsed the checks, turned them back to plaintiff with $700 of its own money. This settled the rent up to the 1st of February, 1916, after which date defendants paid at irregular dates, usually from $200 to $700 at a time for the remaining seven months of the lease $4,900, taking receipts on account of the rental. Only one receipt referred to the month for which the money was paid, that of May 31, 1916, for $200 "On April building rent."  REVERSED AND REMANDED.

For appellant there was a brief over the name of *Messrs. Malarkey, Seabrook & Dibble,* with an oral argument by *Mr. Arthur M. Dibble.*

For respondent there was a brief and an oral argument by *Mr. Chester A. Sheppard.*

BEAN, J.—Upon the trial of the cause there was testimony tending to show that the general manager Mr. Dundore, on behalf of plaintiff under the circumstances as alleged in defendant's answer, agreed to reduce the rent as alleged. This was contradicted on the part of plaintiff by the testimony of Mr. Dundore, the general manager of plaintiff in Oregon. It was contended on behalf of plaintiff upon the trial that the general manager had no authority to make the alleged agreement and that such authority must be shown to be in writing, and further that evidence of an oral agreement to change the terms of the written lease was incompetent. This was evidently the view taken by the trial court in directing a verdict for plaintiff.

1, 2. A lease in writing may be modified as to the rate of rental for the remainder of the term of such lease when the same is for the period of no more than one year by an oral agreement: 18 Am. & Eng. Ency. of Law (2 ed.), p. 276; *Hastings* v. *Lovejoy,* 140 Mass. 261 (2 N. E. 776, 54 Am. Rep. 462); *Watson* v. *Janion,* 6 Or 137; *McDaniels* v. *Harrington,* 80 Or. 628 (157 Pac. 1068). Where, after breach, the lessor elects to waive the condition of the lease and the lessee being threatened with bankruptcy, and is financially unable to pay rent in the amount provided for in the written lease, the landlord and tenant may make an enforceable oral agreement reducing the rental for the remainder of the term of one year. The tenant's agreements to continue the occupancy of the premises and

to pay the reduced rental and to continue in business furnish good and sufficient consideration for the modification: 24 Cyc. 914; *Jaffray* v. *Greenbaum,* 64 Iowa, 492 (20 N. W. 775); *Hyman* v. *Jockey Club etc. Co.,* 9 Colo. App. 299 (48 Pac. 671); *Andre* v. *Graebner,* 126 Mich. 116 (85 N. W. 464); *Lamb* v. *Rathburn,* 118 Mich. 666 (77 N. W. 268); *Wilson* v. *People's Gas Co.,* 75 Kan. 499 (89 Pac. 897).

In *McDaniels* v. *Harrington,* 80 Or. 628 (157 Pac. 1068), it was said by Mr. Justice McBride, at page 631 of 80 Or. (1070 of 157 Pac.), that:

"In this state leases for a period of one year are not required to be in writing, and it would be an anomaly in a contract that to surrender a lease should require a greater degree of formality in its execution than that requisite to create it."

In the present case the modification agreement only related to one year of the lease, and an entire new lease for such a period of time could have rested in parol and yet been valid and it therefore follows that an oral modification covering no longer a period of time than one year would be binding.

In *Wilson* v. *People's Gas Co.,* 75 Kan. 499 (89 Pac. 897), it was held that a written lease may be subsequently modified or changed with respect to the manner and terms of paying rent by an oral agreement, at page 898 of 75 Kan. (898 of 89 Pac.), the court said:

"The last contention is that a subsequent parol agreement by which the obligations of the lessee are changed cannot be proven. The authorities are otherwise."

It has been held evidence is admissible to show that the time of performance of a written contract has been enlarged by a subsequent oral agreement: *Scott* v.

*Hubbard,* 67 Or. 498 (136 Pac. 653).  See, also, *Keller* v. *Bley,* 15 Or. 429 (15 Pac. 705).

Section 808, subdivision 7, L. O. L., providing that an agent's authority to make an agreement concerning real property must be in writing, excludes a lease for one year or less in duration and an agreement reducing the rate of rental of a sublease for one year need not be in writing: Section 808, subds. 6 and 7, L. O. L.; Section 804, L. O. L.; *Edwards* v. *Perkins,* 7 Or. 149; *Hughes* v. *Lansing,* 34 Or. 118 (55 Pac. 95, 75 Am. St. Rep. 574); *Negley* v. *Jeffers,* 28 Ohio St. 90; *Westervelt* v. *People,* 20 Wend. (N. Y.) 416; *Buhl* v. *Kenyon,* 11 Mich. 249 (83 Am. Dec. 738); *South Baltimore Co.* v. *Muhlbach,* 69 Md. 395 (16 Atl. 117, 1 L. R. A. 507).

3. We therefore hold that under the circumstances in this case for the year from September 1, 1915, to September 1, 1916, it was competent for the defendant to show that the plaintiff for a sufficient consideration by an oral agreement reduced the rental for such remainder of the term.  This leaves the question as to whether or not the general manager Mr. Dundore was authorized to make such an agreement.  Mr. J. H. Dundore as a witness for plaintiff testified that he was the general manager of the plaintiff corporation in Oregon; that he had been such since June, 1912, and had general charge of all its business and interest in the City of Portland.  It appears from the record that plaintiff duly appointed J. H. Dundore as attorney in fact, and authorized agent for it in the State of Oregon, to make and accept service of all processes in the courts on behalf of plaintiff under the provisions of the statute; that Mr. Dundore was the managing agent of the plaintiff corporation in the State of Oregon, and clothed with the powers usually given to

such managing agent, and had conducted its business
in the City of Portland as such agent for several years
and particularly attended to negotiations in regard to
the renting of the building in question.

4–8. Since corporations can only act through their
officers and agents, they have power to appoint agents
with full authority to act for the corporation, and as
a general rule all acts within the powers of a corpora-
tion may be performed by agents of its own selection.
Express authority by resolution directing officers and
agents to represent the corporation in the execution of
contracts is not indispensable to the exercise of that
power.   Their authority may be implied from their
conduct and the acquiescence of the corporation.   A
person who knows that the agent of a corporation
habitually transacts certain kinds of business for such
corporation under circumstances which necessarily
show knowledge on the part of those charged with the
conduct of the corporate business has the right to
assume that such agent is acting within the scope of
his authority: 7 R. C. L., § 616, p. 620; *Brace* v. *North-
ern Pac. R. Co.,* 63 Wash. 417 (115 Pac. 841, 38 L. R. A.
(N. S.) 1135); *Curtis Land etc. Co.* v. *Interior Land
Co.,* 137 Wis. 341 (118 N. W. 853, 129 Am. St. Rep.
1068).   It is now well settled that when, in the usual
course of the business of a corporation, an officer has
been allowed to manage its affairs, his authority to
represent the corporation may be implied from the
manner in which he has been permitted by the
directors to transact its business: 7 R. C. L., § 620,
p. 623.   The general principle that persons dealing
with corporate officers and agents are bound to take
notice of the extent of their authority must, of course,
be considered in connection with the equally estab-
lished rule that a corporation is bound by the acts of

its officers and agents acting within the apparent scope of their authority, and, if the agent appears to be acting within his authority, the person dealing with him is not charged with knowledge of extrinsic facts making it improper for him to act in that case: 7 R. C. L., § 622, p. 626; *Credit Co.* v. *Howe Machine Co.,* 54 Conn. 357 (8 Atl. 472, 1 Am. St. Rep. 123). At the present time the general business of corporations is frequently intrusted to the management of a general manager, and it is well recognized that the corporation is bound by the acts of such manager within the apparent scope of his authority: 7 R. C. L., p. 628, § 627. It has been held that the powers ascribed to the managing agent of a corporation by implication of law, include, in the general manager of a foreign corporation, the power to make an agreement to pay a stated price for the rent of a storehouse occupied by an agent to sell the goods of the corporation: 10 Cyc. 925.

The authority of Mr. Dundore the managing agent was indicated by his testimony introduced by the plaintiff, when he testified as follows:

"A. Yes, we decided about April or May that we wanted part of that space ourselves in moving our talking department from the basement upstairs, and I told them we would release them any time they wanted to go."

The jury might reasonably infer that the manager having authority to release a party from his obligations under a lease, had authority to make an agreement adjusting the rent. It therefore appeared to be the theory of the plaintiff upon the trial of the cause that its manager had authority to negotiate in that respect. We fail to see that it would be entirely consistent for the plaintiff to introduce testimony to that

effect, and then glance in the opposite direction and say that its general manager in Oregon had no authority to make an agreement affecting the rent of the house in which, under the control of such general manager, it conducted its business, by reducing the rent of a subtenant in order that the corporation might not lose such sublessee and the entire rent.

9. A motion for a directed verdict is equivalent to a demurrer to the evidence. It admits the truth of the evidence given by the party against whom the verdict is directed and also such inferences and conclusions as are reasonably deducible therefrom: *Ruber* v. *Miller,* 41 Or. 103 (68 Pac. 400). In *Neppach* v. *Oregon & C. R. R. Co.,* 46 Or. 374 (80 Pac. 482, 7 Ann. Cas. 1035), this court in dismissing defendant's contention that the evidence was insufficient to be submitted to the jury upon the question as to an agent's authority to bind defendant said at page 391 of 46 Or. (485 of 80 Pac.) :

"The appointment or authority of an agent is a question of fact; what he may do by virtue thereof is a question of law. When the appointment and authority, real or apparent, are admitted, or are not in controversy, the court may declare whether they empower the agent to perform the particular act in question. Where, however, there is a dispute as to the appointment or the authority conferred, the fact of such appointment or authority must be found by the trier of fact."

See, also, *Calvert* v. *Idaho Stage Co.,* 25 Or. 412 (36 Pac. 24).

In *West* v. *Washington Ry. Co.,* 49 Or. 436 (90 Pac. 666), where it was contended that McCabe, vice-president and general manager of defendant corporation, had no authority to execute a written lease, it was said at page 446 of 49 Or. (670 of 90 Pac.) :

"When McCabe testified that he was general manager, he thereby gave evidence that he was agent for the company in all his dealings. In effect he became, in his dealings with the public, the corporation itself."

See, also, *Dillard* v. *Olalla Mining Co.,* 52 Or. 132 (94 Pac. 966, 96 Pac. 678).

It is the position of plaintiff that Section 808, is applicable to this case. Under this section, no estate or interest in real property, other than a lease for a term not exceeding a period of one year, can be created otherwise than by a conveyance or other instrument in writing subscribed by a party or his lawful agent under written authority. Therefore, a lease for a term of one year can be created otherwise than by such an instrument in writing subscribed by the party; and a lease for a year can be created otherwise than by an instrument signed by the agent under written authority and such a lease can therefore be made by an agent without written authority. A lease for a term not exceeding one year is expressly excepted from the formalities required by the statute.

10, 11. In *Edwards* v. *Perkins,* 7 Or. 149, it was held that a lease for a term of years is a chattel interest and is personal property which does not descend to the heir of the owner, but to the administrator. The record in the present case does not directly disclose whether Mr. Dundore, the general manager of plaintiff, had authority in writing to make the agreement reducing the rent. There is no testimony that he did not have such authority and no direct testimony to the effect that he did have. There is a presumption, however, that the general manager of the plaintiff corporation had proper and lawful authority to make the contract which the testimony tended to show he did make: 10 Cyc. 1003. While the testimony on behalf

of defendant tending to show that an agreement was made for a reduction of the rent was contradicted by the testimony on behalf of plaintiff, we think the court erred in not submitting the question to the jury.

The judgment of the lower court is therefore reversed, and the cause remanded for a new trial.

REVERSED AND REMANDED.

McBRIDE, C. J., and JOHNS and BENNETT, JJ., concur.