Argued and submitted December 4, 1989, reversed and remanded with instructions October 24, 1990, reconsideration denied February 13, petition for review denied March 5, 1991 (311 Or 187)

Louis MALENSKY, Jr.,
*Appellant,*

*v.*

MOBAY CHEMICAL CORPORATION,
Cenex Ag, Inc. and Full Circle, Inc.,
*Respondents.*

(85-0211C; CA A48685)

799 P2d 683

John R. Faust, Jr., P.C. Portland argued the cause for appellant. With him on the briefs was Schwabe, Williamson & Wyatt, Portland.

Larry A. Brisbee, Hillsboro, argued the cause for respondent Mobay Chemical Corporation. With him on the brief was Schwenn, Bradley, Batchelor, Brisbee & Stockton, Hillsboro.

John B. Lewis, Forest Grove, argued the cause and filed the brief for respondents Cenex Ag, Inc., and Full Circle, Inc.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Plaintiff, a raspberry grower, sued the maker and sellers of Metasystox R ("MSR"), an insecticide that plaintiff alleged damaged his black raspberry crop in 1984 by repelling bees essential to pollination.[1] His claims were for fraud, negligence and products liability. Judgment was entered for plaintiff on a jury verdict. Defendants' motion for judgment notwithstanding the verdict was allowed, and plaintiff appeals. We reverse.

■ In reviewing a judgment *n.o.v.*, we must reinstate the jury verdict unless we can say affirmatively that there is no evidence to support it. *Ragnone v. Portland School Dist. No. 1J,* 291 Or 617, 624, 633 P2d 1287 (1981); *Jacobs v. Tidewater Barge Lines,* 277 Or 809, 811, 562 P2d 545 (1977). The trial court found that there was no evidence that MSR had caused the bees to be repelled from the plants and granted the judgment *n.o.v.* Our inquiry on review is whether there is any evidence of causation that would support the jury verdict. In performing this function, we do not weigh the evidence, but accept as true all evidence and inferences therefrom in the light most favorable to plaintiff. *Jacobs v. Tidewater Barge Lines, supra,* 277 Or at 811.

In 1983, in order to combat an aphid infestation, plaintiff bought some MSR from defendant Full Circle, a distributor of agricultural chemicals. Full Circle representatives advised him that, if he applied the chemical as directed on the label, it would not repel the bees that would pollinate his raspberry plants. Plaintiff mixed the MSR with a spreader called WA100 and a buffering agent called Sorba MG. Full Circle had recommended a spreader called X77, but WA100 is "very comparable" to X77. Plaintiff had used Sorba MG and X77 before, with no adverse effects. Plaintiff sprayed MSR on his plants from May 14 through May 17, 1984, according to the instructions printed on the MSR label. After application of the insecticide, bees were delivered to pollinate plaintiff's crop, but they did not forage the plants normally until over two weeks later, at which time the raspberries were past their peak bloom. As a result, plaintiff's raspberry yield was significantly reduced.

---

[1] Plaintiff dismissed his complaint against defendant Cenex Ag, Inc. on the first day of trial.

■ Plaintiff contends that there was evidence of causation: specifically, his testimony in which he gave an opinion on causation.[2] He contends that his opinion is admissible on the basis of his expertise as a raspberry grower or because his observations arising from long term farming may be a source of expertise from which an opinion may be formed. Defendants argue that plaintiff did not give an opinion on causation and that, even if he did, he was not qualified as an expert in the field of chemical analysis or entomology and was, therefore, not qualified to render an opinion on causation.

In *Meyer v. Harvey Aluminum,* 263 Or 487, 490, 501 P2d 795 (1972), the court determined that the plaintiff's testimony alone was insufficient to establish causation. The plaintiff's conclusory statement that the defendant's plant's emission of fluorides caused his crop damages was the only evidence addressing causation. In that case, the plaintiff did not say how the damage came about or what was the basis for his opinion. The Supreme Court concluded that the trial court had erred in admitting the testimony:

> "There is no evidence, however, that the witness had made any observations from his land ownership and farming which would lend credence to his opinion that fluorides caused the damage." 263 Or at 490.

In the present case, plaintiff testified about his observations as to what happened in 1984 and in the tests that he conducted in later years. He described the particulars of his tests and their similarity to the conditions in 1984. In 1986, he took a count of bees in 4 acres of his raspberry fields. He then had the fields sprayed with the same chemical mix used in

---

[2] On cross-examination of plaintiff, the following exchange took place:

"Q. What we're talking about in terms of the Metasystox R and what you're claiming is that it did something to prevent the bees from visiting the flowers?

"A. Well, evidently — it's my opinion —

"Q. Not your opinion, your claim.

"A. My claim is that it damaged my crop due to the fact that it changed the physical chemistry of my fruit. My fruit spur. In particular the nectar.

"* * * * *

"Q. Who has supplied you with the information that there is some kind of nectar damage?

"A. This is my judgment from watching the bees and the tests that I have run over the last three or four years."

1984.[3] The mix was applied with the same apparatus used in 1984. The result was the same as it had been in 1984: The bees did not forage normally in the area sprayed with MSR, and they did forage normally in nearby unsprayed fields.

We conclude that plaintiff did give an opinion on causation. Although his assertion that the MSR damaged the nectar was given in the course of his cross-examination, concerning his "claim," rather than specifically as his "opinion," he did, nevertheless, articulate his opinion as to what caused the problems with his raspberry crop. He was not an expert on the chemistry of the effect of MSR on his plants, but his observations and experience in the growing of raspberries allowed him to give a competent opinion. *Meyer v. Harvey Aluminum, supra,* 263 Or at 487; *Western Feed Co. v. Heidloff,* 230 Or 324, 333-34, 370 P2d 612 (1962).

Even if plaintiff's testimony alone were not sufficient to sustain the jury verdict, when it is considered together with the testimony of Dr. Gary, there was sufficient evidence to allow the jury to conclude that MSR did cause the problems. Gary is an entomologist, specializing in bee behavior. Defendants concede that Gary was properly qualified and could render an opinion on the issue of causation. They contend, however, that he did not do so.

Gary testified that "anything that might change the quality and the quantity of nectar or pollen in a crop very dramatically affects the number of bees that are there." He explained that MSR was capable of getting into the nectar and having an impact on the bees. He did not attempt to testify as to what occurred chemically within the plants, but he concluded that MSR had something to do with the bee's behavior:[4]

"Q. When it's taken into the plant [MSR] metabolizes[.] [C]orrect?

"A. That's my understanding.

---

[3] Although it is true that there was conflicting evidence about the accuracy of plaintiff's duplication of the mix, the jury was entitled to believe plaintiff's testimony that the mix was the same as was used in 1984.

[4] Gary's testimony was directed toward the tests that plaintiff did in 1985 and 1986.

"Q. Okay. You're not saying that once it's taken into the plant that it remains in its pure form?

"A. I'm not commenting on the nature of that material once it gets in the plant. My reference here is to the fact that *this has gone into the plant* and we have seen that *something happened in the plant.* We don't know what but *the bees detected it and responded to it.*" (Emphasis supplied.)

Defendants offered considerable evidence that there were other possible causes of the problems with the crop. They argue that, because there were so many potential causes, it was too speculative to allow the jury to conclude that MSR was the cause. Plaintiff also presented evidence, however, from which the jury could conclude that the other potential causes were not involved here. For example, in discussing the 1986 tests that plaintiff conducted, Gary stated:

"Well, since the check plot eliminates the possibility of all other variables here except for the spray application my opinion is that the application of this spray has somehow changed the food quality and/or quantity. It's somehow changed the plant condition in a way that the material is no longer attracted [*sic*] to bees, in fact, by our common usage of the term it's repelling the bees. So the bees aren't going there except for the ones that sort of stray in there."

We conclude that there was sufficient evidence to support the jury verdict.

■■ Defendant Mobay makes several cross-assignments of error. It asserts that the trial court erred in denying its motions for directed verdict on the fraudulent misrepresentation and products liability claims. A directed verdict is appropriate only if there is a complete absence of proof on an essential issue or when there is no conflict in the evidence and it is susceptible of only one construction. *Adams v. Knoth,* 102 Or App 238, 242, 794 P2d 796, *rev den* 310 Or 422 (1990). We view the evidence in the light most favorable to plaintiff and reverse only if there was no evidence from which a jury could have found the necessary facts. *Brown v. J. C. Penney Co.,* 297 Or 695, 705, 688 P2d 811 (1984); *Adams v. Knoth, supra,* 102 Or at 243.

■     Mobay's first assignment of error relates to plaintiff's fraud claim. It argues that plaintiff failed to sustain his burden of proof on the issue of falsity of the statement made by its representatives. There was evidence, however, that a Full Circle representative told plaintiff that he had consulted Mobay about potential problems with MSR, including bee repellency, and that there would be "absolutely no problems, just follow the label." Although no communication was made by a Mobay representative to plaintiff, a jury could find that a Mobay representative gave information to Full Circle with the intention that it would pass the information along to plaintiff. That finding could support a claim for intentional misrepresentation against Mobay. *Carpenter v. Egli,* 272 Or 337, 340, 536 P2d 1236 (1975).

■■     Mobay also asserts that plaintiff failed to meet his burden of proof on the issue of intent. The requisite intent in a fraud claim, however, may be established by a showing that the defendant acted with a reckless disregard for the truth or falsity of the representation made. *Riley Hill General Contractor v. Tandy Corp.,* 303 Or 390, 406, 737 P2d 595 (1987). There was evidence that there had been previous problems with bee repellency after the use of MSR and that representatives of Mobay were aware of them. The evidence was sufficient for the jury to find that Mobay made a false representation to plaintiff and that it was made with reckless disregard for its truth or falsity.

Mobay's second cross-assignment challenges the denial of its motion for directed verdict on the products liability claim on the grounds that there was no proof that MSR was defective or unreasonably dangerous when it left its control and that economic loss alone was insufficient for such a claim. The same actual damages were alleged, however, for plaintiff's fraud, negligence and strict liability claims; namely, the losses resulting from the failure of the 1984 raspberry crop. The jury found defendants liable on each claim and awarded plaintiff damages for the total amount of the crop loss. Because we reinstate the jury verdict on the negligence claim, we need not address the assignment of error regarding the products liability claim.[5]

---

[5] Defendant Mobay's remaining arguments and cross-assignments of error are without merit.

Reversed and remanded with instructions to reinstate the jury verdict and enter a judgment thereon.