Argued and submitted July 13, 1999, affirmed May 3, 2000

## OUTBACK CONTRACTING, INC.,
an Oregon corporation,
*Appellant,*

*v.*

## STONE SOUTHWEST, INC.,
and Stone Container Corporation,
a Delaware corporation,
doing business in Oregon under the assumed
business name of Stone Forest Industries;
and Leonard Smith, individually,
*Respondents.*

(95-CV-4545CC; CA A101784)

1 P3d 469

Doyle L. Schiffman argued the cause and filed the briefs for appellant.

Timothy E. Brophy argued the cause for respondents. With him on the brief were Mark R. Weaver and Brophy, Mills, Schmor, Gerking & Brophy.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

Armstrong, J., dissenting.

## KISTLER, J.

This case arises out of an oral agreement between plaintiff Outback Contracting, Inc., and defendant Stone Container Corporation[1] by which Stone agreed to cause a third party to transfer land to Outback. The jury found that Stone breached the agreement and returned a verdict in favor of Outback. Stone moved for judgment notwithstanding the verdict because the agreement fell within the statute of frauds. The trial court allowed the motion and entered judgment in Stone's favor. We affirm.

We state the facts consistently with the jury's verdict. *Malensky v. Mobay Chemical Corp.*, 104 Or App 165, 167, 799 P2d 683 (1990), *rev den* 311 Or 187 (1991). Beginning in the early 1990s, Outback and Stone had an ongoing business relationship in which Outback would periodically locate timberland for Stone. Typically, Stone would provide Outback with money to acquire the property. Stone would receive the timber from the purchase, and Outback would receive title to the real property.

After viewing property owned by Donald and Helen Lilja, Outback talked to Stone about purchasing the Liljas' property. When Outback and Stone learned that the property was to be sold by bid, Outback entered into an oral agreement with Stone's agents.[2] Stone and Outback agreed orally that Stone would submit a bid in Outback's name to buy the property. If the bid was successful, Stone would pay the Liljas $2,278,632 in return for their deeding the real property to Outback and the timber to Stone. According to Outback, the money and the real property would be placed in escrow, and the escrow agent would be instructed to carry out the various transactions.

---

[1] There are three defendants in this case, Stone Southwest, Inc., Stone Container Corporation, and Leonard Smith. Stone Container Corporation is the successor corporation to Stone Southwest, Inc., and Smith is Stone Container Corporation's employee. We refer to the three defendants collectively as Stone.

[2] Outback entered into the agreement with Sid Pacheco, a log buyer for Stone. Pacheco then discussed the deal with his immediate supervisor, Leonard Smith. The parties dispute whether Smith approved the deal. Neither Pacheco nor Smith, however, had written authority to bind Stone to transactions as large as this one. Rather, their written authority specifically limited Pacheco's authority to transactions of $150,000 and Smith's authority to transactions of $500,000.

Stone submitted a bid on the property. However, instead of putting Outback's name on the bid, Stone submitted the bid in its name only. Stone's bid was successful and Stone acquired title to the property. When Stone failed to transfer the real property to Outback, Outback brought this action claiming that Stone breached their oral agreement and that, as a result of that breach, the property was not deeded to Outback. Outback sought damages of $485,000, an amount equal to the value of the real property.

The jury returned a verdict in Outback's favor, and the trial court granted Stone's motion for judgment notwithstanding the verdict. The trial court found that because the agreement "concern[ed] the sale of an interest in real property," it was unenforceable under ORS 41.580(1)(e).[3] Additionally, the trial court found that because there was no evidence that Stone's agents had written authority to enter into the agreement with Outback, the agreement was unenforceable under ORS 41.580(1)(f). *See* n 3 above.

On appeal, Outback argues that the trial court erred in granting Stone's motion for judgment notwithstanding the verdict. Outback does not dispute that the agreement was not in writing. It argues, however, that because the agreement did not require Stone to transfer any property to Outback, the agreement was not within the statute of frauds.[4] Stone's response tracks the trial court's reasoning. It argues that the agreement was an agreement for the sale of land and alternatively that it was an agreement concerning real property made by an agent whose authority was not in writing. We agree with the trial court that the parties' agreement was

---

[3] ORS 41.580(1) provides, in part:

"In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by the lawfully authorized agent of the party * * *:

"* * * * *

"(e) An agreement * * * for the sale of real property, or of any interest therein.

"(f) An agreement concerning real property made by an agent of the party sought to be charged unless the authority of the agent is in writing."

[4] Outback has not argued on appeal that part performance took the agreement out of the statute of frauds.

"[a]n agreement * * * for the sale of real property" and thus came within ORS 41.580(1)(e).

■     The agreement between Outback and Stone consisted of three steps. The first step required Stone to submit a bid in Outback's name. If the bid were accepted, the second step required Stone to pay the Liljas. The third step required the Liljas to deed the timber to Stone and the real property to Outback. The agreement did not simply require Stone to submit a bid to the Liljas as Outback's agent. Rather, it required Stone both to pay the purchase price and to cause the real property to be deeded to Outback in return for the services that Outback had provided to Stone.

■     The courts have long recognized that when, as in this case, Stone and Outback agree that Stone would pay the Liljas to transfer their land to Outback, the agreement is an agreement for the sale of land and thus within the statute of frauds. Arthur Linton Corbin, 2 *Corbin on Contracts* § 399, 366 (2d ed 1950) (summarizing cases); Samuel Williston, 3 *A Treatise on the Law of Contracts* § 488, 513 (3d ed 1960) (same); *Restatement (Second) of Contracts* § 125(2) (1979). Williston summarizes the cases concisely:

> "Nor is it material that the conveyance is not to be made directly from one party to the contract to the other. A contract to convey to or purchase from a third person is within the Statute.
>
> "A contract in which one party promised to procure a conveyance to the other by a third person has been held not to be within the Statute where the price for the land was to be paid by the grantee to the grantor, on the ground that such a contract would be merely a contract of agency, in which the agent guaranteed that he would successfully accomplish the business intrusted to him. Most courts do not make this distinction and hold such an absolute promise to procure a conveyance within the Statute.
>
> "Clearly, if the party promising to procure the conveyance is himself to pay whatever price is necessary to the grantor, and is to receive from his own co-contractor a price not for his services, but for the land, the conveyance of which he agrees to procure, the contract is within the Statute."

■ *Williston on Contracts* § 488 at 513-14 (footnotes omitted).

As Williston observes, some courts would hold that if Stone had not agreed to pay the Liljas for the land and had agreed only to serve as Outback's agent, their agreement would not be within the statute of frauds. That is not what occurred here, however. In this case, Stone and Outback agreed that Stone would pay the Liljas for the land and cause them to transfer it to Outback. That agreement for the transfer of land is one that Williston explains is "[c]learly" within the statute—a point on which Corbin and the *Restatement* agree.[5]

The Oregon courts have never had occasion to consider whether the specific form of agreement at issue here is within Oregon's statute of frauds. They have, however, considered substantially identical agreements. *See Huffstutter v. Lind*, 250 Or 295, 442 P2d 227 (1968); *Dennis v. City of McMinnville*, 128 Or 101, 106, 269 P 221 (1928). In *Huffstutter*, the Lenskes alleged that they entered into an oral agreement with the Linds to buy property jointly. The Linds agreed to pay a third party for land and take title to the land in their names for the joint benefit of the Lenskes and themselves. *Huffstutter*, 250 Or at 298. The Lenskes agreed to pay the Linds later for their one-half interest. *Id.* The court held that the agreement was within the statute of frauds, reasoning that "[w]here there is nothing more than an oral agreement to purchase property and thereafter to convey to another an interest therein, the promise is unenforceable." *Id.* at 298, 300.

There is no material difference between the agreement in *Huffstutter* and the agreement here. In *Huffstutter*, the Linds agreed to pay a third party for the land, hold it for the benefit of the Lenskes, and then transfer it to them. In

---

[5] Corbin reasons:

"Likewise, it has been held that a contract between A and B whereby B promises to cause C to transfer land to A is within the statute. This, too, may be regarded as within the words and as involving a lesser degree the mischief, if B is not acting merely as a broker for A, but must buy the land from C and then himself receive the agreed price from A. If B is merely to be paid a commission for his service, and the price of the land is paid by A direct to C, the contract between A and B is not within the land clause."

2 *Corbin on Contracts* § 399 at 366 (footnotes omitted).

this case, Stone agreed to pay the Liljas for the land and cause them to transfer the land to Outback. Whether the parties agreed that the Liljas would transfer the land to Stone to hold for Outback or agreed that Stone would pay the Liljas to transfer the land directly to Outback is immaterial to the question whether the agreement was an agreement for the sale of land. If the former is an agreement for the sale of land, so is the latter.

The dissent's contrary conclusion turns on two related but separate propositions. First, the dissent proposes the following new rule for interpreting the statute of frauds: "[A] contract for the sale of land that is subject to subsection (e) is a contract in which one party agrees to sell land to another party, such that compliance by the parties with an order for specific performance of the contract will result in a sale of the land." 167 Or App at 107. The difficulty with the dissent's proposed rule is that the Oregon Supreme Court necessarily rejected it in *Huffstutter*. In that case, the court held that A and B's agreement that A would buy land from C and hold it for the benefit of B was within the statute of frauds. If the dissent's proposed rule were correct, *Huffstutter* would have been decided differently.[6]

Second, the dissent reasons that, even if the statute of frauds embraces contracts for the purchase of land from a third person, there is no distinction, for the purposes of the statute of frauds, between the agreement in this case—in which Stone agreed to pay the Liljas for the land and cause them to transfer it to Outback—and an agreement in which Stone agreed merely to act as Outback's agent for the purchase. Corbin, however, distinguishes the two types of agreements. *See* n 5 above. He reasons that the former is within the statute while the latter is not. As discussed above, Williston also recognizes that the two types of agreements present different issues, although he notes that the majority

---

[6] Although the dissent finds support for its proposal in a footnote from Corbin that comments on a suggestion in an earlier treatise, *see* 167 Or App at 107, Corbin's passing observation is of questionable value; the treatise Corbin quotes goes on to explain that the courts have not limited the statute of frauds in the way that the treatise suggests, as Corbin also does. *See* Causten Browne, *A Treatise on the Construction of the Statute of Frauds* § 263a (James A. Bailey, Jr. ed., 5th ed 1895); 2 *Corbin on Contracts* § 399.

of the courts have held that both types of agreements are within the statute. 3 *Williston on Contracts* § 488 at 513.

Contrary to the assumption that underlies much of the dissent's reasoning, this case does not require us to decide the issue over which Williston and Corbin disagree: whether an agreement merely to act as the purchaser's agent is within the statute of frauds. It is sufficient to say, as the cases and treatises have, that an agreement in which Stone agreed to pay the Liljas and cause them to transfer the real property to Outback is an agreement for the sale of land within the meaning of the statute.

Although the dissent would interpret the statute of frauds as narrowly as possible, in our view, the virtually uniform judicial interpretation that has both preceded and followed the Oregon Legislature's adoption of that statute provides a more reliable guide to its meaning. When *Huffstutter*'s holding is viewed in the context of the other authorities addressing the specific type of agreement at issue here, it becomes clear that the trial court correctly granted Stone's motion for judgment notwithstanding the verdict. *See* ORS 41.580(1)(e); 3 *Williston on Contracts* § 488 at 513-14; 2 *Corbin on Contracts* § 399 at 366-67.

Affirmed.

**ARMSTRONG, J.,** dissenting.

A jury found that defendant had made an oral contract with plaintiff to submit a bid for the purchase of land that, if accepted by the sellers, would have resulted in a sales contract by which the land would be conveyed to plaintiff and the timber on the land to defendant. The jury further found that defendant had breached that contract and that plaintiff was entitled to damages for the breach. Notwithstanding the verdict, the trial court entered judgment for defendant on the ground that the contract between plaintiff and defendant was unenforceable because, under the statute of frauds, it or a memorandum of it had to be in writing and signed by defendant for it to be enforceable, and it was not. The majority agrees with that conclusion and affirms the judgment for defendant. It errs in doing that.

The statute of frauds is codified in Oregon at ORS 41.580. It provides, as relevant:

"(1)   In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by the lawfully authorized agent of the party * * *:

"* * * * *

"(e)   An agreement for the leasing for a longer period than one year, or for the sale of real property, or of any interest therein.

"(f)   An agreement concerning real property made by an agent of the party sought to be charged unless the authority of the agent is in writing."

The trial court concluded that subsections (e) and (f) apply to the parties' oral contract and render it unenforceable. The majority agrees with the trial court that subsection (e) applies to the contract. It therefore does not decide whether subsection (f) applies as well. In fact, neither subsection applies.

Subsection (e) requires a contract "for the sale of real property" to be in writing. It should be obvious that the agreement between plaintiff and defendant is not a contract for the sale of real property. It is a contract between the two parties on the steps that they would take to pursue a contract with the Liljas, the owners of certain real property, for the sale of that property. Had the contract between the parties been performed, it would have *led* to a contract between them and the Liljas for the sale of real property, but the parties' contract is not one that is, itself, a contract for the sale of real property.

The majority reaches a contrary conclusion by noting that the parties' contract, if fully performed, would have resulted in a sale of real property to plaintiff. That is not strictly true. Had defendant fully performed its obligations under the contract, it would have submitted a bid to the Liljas, and, if the bid were accepted, it would have tendered the purchase price for the land. However, that would not have resulted in the sale of the land to plaintiff. That is because, in order for the sale to occur, the *Liljas* would have

had to perform their obligations under the separate contract that the parties would have entered for the sale of the land. In other words, had a court ordered specific performance of the contract between plaintiff *and* defendant, it would not have resulted in an order for the sale of the land.

In my view, a contract for the sale of land that is subject to subsection (e) is a contract in which one party agrees to sell land to another party, such that compliance by the parties with an order for specific performance of the contract will result in a sale of the land. Here, a sale of land *might* result from full performance of the parties' contract, but no party to the contract will end up selling land to another party.

I am not the only one to hold that view of the statute. Professor Corbin and the author of a nineteenth-century treatise on the statute held it as well. In his discussion of the statute, Corbin endorsed the other author's statement that the statute should be interpreted to apply only to bilateral contracts in which one party sells land to the other:

> "Browne * * * says: 'It would seem to be the more reasonable construction of the statute, as it regards contracts for land, that it embraces only contracts by which one of the parties parts with land to the other.' In the light of our general experience with the statute of frauds, it is believed that the rule thus stated by Browne would be sufficient to attain the purposes of the statute."

Arthur Linton Corbin, 2 *Corbin on Contracts* § 399, 365 n 22 (1950) (quoting Causten Browne, *A Treatise on the Construction of the Statute of Frauds* § 263a, 350 (James A. Bailey, Jr. ed., 5th ed 1895)). No Oregon case of which I am aware requires us to reach a different conclusion about the statute.

The distinction between the majority's and my view of the statute is illustrated by the following hypothetical. A principal employs an agent to attend an auction to bid on land for the principal. The principal agrees to buy the land if the agent submits the successful bid for it and to pay the agent a fee at the close of the sale. In the majority's view of the statute, the employment contract between the principal and agent would be a contract for the sale of land, because, if the contract were fully performed, a sale of land would occur.

In my view, the contract is not such a contract, because it is not one in which a party to the contract will sell land to any other party.

Of course, there is a distinction between the disputed and hypothetical agreements, in that defendant was to pay the purchase price for the land on a successful bid under the disputed contract and the principal would pay for the land under the hypothetical contract. But that distinction does not affect the character of the contracts and make one a contract for the sale of land but not the other.[1]

Subsection (f) of the statute supports my conclusion. As I explain later in the dissent, 167 Or App at 111-12, that subsection makes written contracts that are subject to subsection (e) unenforceable if they were signed by agents for principals, unless the authority of the agents to act for the principals is in writing. The majority's interpretation of subsection (e) makes subsection (f) superfluous, because every contract that subsection (f) requires to be in writing to be enforceable would be required by subsection (e) to be in writing as well. That is because every contract covered by subsection (f) would be, under the majority's interpretation of subsection (e), a contract for the sale of real property. ORS 174.010 directs us to construe statutes, if possible, in such a way as to give effect to all of their provisions. The majority's interpretation of subsection (e) runs afoul of that principle, because it unnecessarily renders subsection (f) superfluous.

I acknowledge that the first and second *Restatement of Contracts* provide some support for the majority's interpretation of the statute. Both contain sections that provide that the statute of frauds applies to contracts in which one party agrees to procure a sale of real property to another party. *See Restatement of Contracts* § 194 (1932); *Restatement (Second) of Contracts* § 126 (1981). Corbin notes, however, that "[t]he authority for [that] rule is not very great; and the argument for its application is not overwhelming." Corbin, 2 *Corbin on Contracts* § 399 at 366 n 23. In fact, the cases cited as support

---

[1] No issue is raised on appeal about whether the parties' agreement lacked consideration, which is the only issue on which defendant's payment of the purchase price might bear.

for that application of the statute of frauds are all nine-teenth-century cases in which the courts appear to have been functioning more as lawmakers than as interpreters of the language of the particular state statute.[2]

    *Henderson v. Hudson*, 15 Va (1 Munf) 510 (1810), *overruled sub silentio on other grounds by Miller v. Ferguson*, 107 Va 249, 57 SE 649 (1907), is illustrative. It involved an oral contract by which the defendant allegedly agreed to acquire land in partnership with the plaintiff. The defendant acquired the land but refused to convey any interest in it to the plaintiff. The plaintiff sued to enforce the contract and to partition the land. The trial court granted the requested relief over the defendant's objection that the statute of frauds prevented enforcement of the contract. The trial court held that the statute did not apply because the contract was not one between a buyer and seller of land, but, if the statute did apply, " 'it ought rather to be called an act to *permit fraud and perfidy.*' " *Id*. at 511 (emphasis in original).

    The Virginia Supreme Court reversed. Both judges who participated in the decision expressed great doubt about whether the plaintiff had proven the existence of the contract. They also concluded that, if the contract existed, the statute of frauds rendered it unenforceable. Judge Fleming explained his reasoning as follows:

> "[I]t appears to me * * * that the case is within the statute of frauds and perjuries, which I consider as a very beneficial and salutary law, that has been too much disregarded in some of our Superior Courts of Chancery. And, although, in the case before us, [the contract] is not immediately between a buyer and seller of land, yet it is within the mischief intended to be guarded against by the statute, which being a remedial one, and intended to prevent a growing evil, ought to be liberally construed * * *."

*Id*. at 517-18. Judge Tucker made a similar point:

> "I will here say, with Lord *Kenyon*, in the last-mentioned case, 'that I lament extremely that exceptions were ever

---

[2] The majority also relies on Williston as support for its view of the statute. *See* 167 Or App at 102-03. It is not surprising that Williston would agree with the first *Restatement* on that issue, because he was the Reporter for that section of it. *See* 1 *Restatement of Contracts*, ix-x (1932).

introduced in construing the statute of frauds: it is a very beneficial statute; and if the Courts had, at first abided by the strict letter of the act, it would have prevented a multitude of suits that have since been brought.' "

*Id.* at 517.

The interpretive approach taken by the Virginia judges in 1810 was consistent with the approach used at that time, in which judges claimed greater latitude in interpreting statutes, but it is inconsistent with the approach that we are required to use now. Hence, there is no particular reason to follow the Virginia case or the other nineteenth-century cases in interpreting our statute.[3]

Views about the statute of frauds have vacillated over time and have reflected competing opinions about its value. The current view among courts appears to be one that seeks to narrow its reach:

> "For transactions within section 4 of the original statute, [*i.e.*, subsection (e) of the Oregon statute,] the strong tendency of courts is to enforce promises that a jury would find to have in fact been made, and, if necessary to this end, to narrow the operation of the statute. * * * The narrowing process has been in part one of supposed interpretation of language and in part one of permitting the jury to determine the application of the statute by a general verdict under instructions that do not in fact hamper the jury in its effort to do 'justice.'
>
> "* * * * *
>
> "* * * It is difficult to say whether the courts have already reached the best solution possible: Let the statute continue to render its *in terrorum* service; but at the same time interpret it strictly and apply it as seldom as possible in a litigated case."

Caroline N. Brown,[4] *Corbin on Contracts* § 12.1, 11-12 (Joseph M. Perillo ed.; rev ed 1997) (footnote omitted).

------

[3] *See Mather v. Scoles*, 35 Ind 1, 2-5 (1870); *Becker v. Mason*, 30 Kan 697, 2 P 850, 852-53 (1883); *Hocker et al. v. Gentry et al.*, 60 Ky (3 Met) 463, 473-74 (1861). It is worth noting that the Iowa Supreme Court reached a conclusion contrary to that of the other courts about the application of the statute to contracts equivalent to the one at issue here. *See Cooley v. Osborne*, 50 Iowa 526, 528-31 (1879); *Bannon v. Bean et al.*, 9 Iowa 395 (1859).

[4] In the footnote to the last quoted sentence, Corbin quotes a statement by Justice Story, speaking for the Supreme Court in *Townsley v. Sumrall*, 27 US (2 Pet) 170, 182, 7 L Ed 386 (1829), and then adds his explanation:

The majority bucks that trend by extending the reach of the statute to apply in circumstances that neither the language of our statute nor our case law require. In doing that, it renders unenforceable a contract that the jury found that the parties had, in fact, made. That is particularly troubling in light of the fact that the parties had entered into and performed more than 20 oral contracts by which plaintiff had acquired land and defendant had acquired the timber on that land. Although the terms of the other oral contracts differed in some respects from this contract, those differences did not make them more or less subject to the statute of frauds. To deny enforcement of the last of that series of oral contracts, on the ground that the statute of frauds prevents its enforcement, properly comes as a surprise to the disappointed plaintiff and serves to permit defendant to use the statute to commit fraud rather than to prevent it. I do not believe that we are required to interpret subsection (e) of our statute to reach that result.[5]

Because defendant is a corporation, it can act only through agents. Hence, the contract that plaintiff seeks to enforce is a contract in which the party to be charged, defendant, became a party to the contract through the acts of its agents. The contract at issue is a contract that concerns real property, so the contract would appear to be one that is governed by subsection (f), which renders unenforceable any contract concerning real property that is entered by an agent for a principal, unless the authority of the agent to act for the principal is in writing.

---

" 'In cases not absolutely closed by authority, this court has already expressed a strong inclination not to extend the operation of the statute of frauds, so as to embrace original and distinct promises, made by different persons at the same time upon the same general consideration.' The court held [in *Townsley*] that the plaintiff, who had purchased a bill of exchange from the drawer at the defendant's request and in reliance on the defendant's promise to accept the bill when presented, could maintain an action on this oral promise."

[5] The majority also claims that this contract is equivalent to one that the Supreme Court held in *Huffstutter v. Lind*, 250 Or 295, 442 P2d 227 (1968), to be invalid under the statute. The two contracts are readily distinguished. The contract in *Huffstutter* was one in which defendants claimed that plaintiffs had agreed to purchase certain real property and then to convey an interest in that property to defendants. That is a contract for the sale of an interest in land by plaintiffs to defendants. It falls squarely within the language of subsection (e) of the statute. It is not equivalent to the contract at issue here.

It would be curious, of course, for the statute of frauds to require an agent's authority to be in writing if the contract that the agent enters for the principal need not be in writing, but the statute, by its terms, does not appear to limit the reach of subsection (f) to real property contracts that subsection (e) requires to be written. However, the Supreme Court gave subsection (f) precisely the latter construction in *Sherman-Clay Co. v. Buffum & Pendleton*, 91 Or 352, 357, 179 P 241 (1919), which involved a contract by which a corporate landlord had agreed to reduce the rent paid by a tenant. The landlord later sued to recover the original amount of rent due for the property. It asserted subsection (f) of the statute of frauds as a defense to the tenant's attempt to enforce the contract to reduce the rent, on the ground that the agent lacked written authority to enter the contract. The Supreme Court rejected the defense, holding that subsection (f) did not apply because the contract concerning real property was not a contract subject to subsection (e). *Id.* Supreme Court interpretations of a statute become part of the statute,[6] so the court's construction of subsection (f) in *Sherman-Clay* controls our interpretation of it. Consequently, because the contract at issue in this case is not subject to subsection (e), the authority of defendant's agent to enter the contract did not have to be in writing either.

In summary, the contract that the jury found plaintiff and defendant to have entered and defendant to have breached is not subject to the statute of frauds. Consequently, the trial court erred in granting defendant's motion to overturn the judgment entered on the jury's verdict, and the majority errs in affirming that decision. I respectfully dissent.

---

[6] *See, e.g., Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995).